# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LINDA L. CLARK; JERRY V. CLARK,
*Plaintiffs-Appellants,*

v.

CAPITAL CREDIT & COLLECTION
SERVICES, INC., an Oregon
corporation; JANINE BRUMLEY;
JEFFREY I. HASSON,
*Defendants-Appellees.*

No. 04-35563

D.C. No.
CV-03-00340-JE

LINDA L. CLARK; JERRY V. CLARK,
*Plaintiffs-Appellees,*

v.

CAPITAL CREDIT & COLLECTION
SERVICES, INC., an Oregon
corporation; JANINE BRUMLEY,
*Defendants-Appellants,*

and

JEFFREY I. HASSON,
*Defendant.*

No. 04-35795

D.C. No.
CV-03-00340-JE

10135

LINDA L. CLARK; JERRY V. CLARK,
         *Plaintiffs-Appellees,*

                v.

CAPITAL CREDIT & COLLECTION
SERVICES, INC., an Oregon
corporation; JANINE BRUMLEY,
                      *Defendants,*

               and

JEFFREY I. HASSON,
              *Defendant-Appellant.*

No. 04-35842

D.C. No.
CV-03-00340-JE

OPINION

Appeal from the United States District Court
for the District of Oregon
John Jelderks, Magistrate Judge, Presiding

Argued and Submitted
December 5, 2005—Portland, Oregon

Filed August 24, 2006

Before: James R. Browning, Dorothy W. Nelson, and
Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge D.W. Nelson;
Partial Concurrence and Partial Dissent by
Judge O'Scannlain

**COUNSEL**

Danny H. Gerlt, Portland, Oregon, for the plaintiffs-appellants.

William R. Goode, Portland, Oregon, for defendants-appellees Capital Credit & Collection Services, Inc., and Janine Brumley.

Thomas W. Brown, Frank H. Lagesen, Wendy Margolis, and Christine Coors-Mitchell, Cosgrove, Vergeer, Kester LLP, Portland, Oregon, for defendant-appellee Jeffrey I. Hasson.

## OPINION

D.W. NELSON, Senior Circuit Judge:

In their action pursuant to the federal Fair Debt Collection Practices Act and the Oregon Unfair Debt Collection Practices Act, Linda and Jerry Clark make several assignments of error. Here, we address only their appeal of the following: (1) the district court's order granting summary judgment in favor of Jeffrey Hasson and granting partial summary judgment to Capital Credit & Collection Services, Inc., and Janine Brumley with respect to the cease communication directive and debt verification; and (2) the district court's failure to rule on a pending discovery motion before deciding the summary judgment motions.[1]

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm, in part, and reverse, in part.

### BACKGROUND

For a number of years, Linda Clark ("Mrs. Clark") was treated for mental health problems by Dr. J. Michael Sullivan at the Evans & Sullivan Clinic in Beaverton, Oregon. When

---

[1]In a separately filed memorandum disposition, we reject the Clarks' other assignments of error and affirm the district court's denial of attorneys' fees under the Oregon statute to Capital, Brumley, and Hasson following entry of judgment in their favor.

Dr. Sullivan retired, Dr. Kathryn Evans, his business partner, purchased his interest in the clinic and claimed an interest in all of the outstanding accounts. After approximately one year of direct and indirect discussions regarding "serious errors" in billing, Dr. Evans referred Mrs. Clark's outstanding account to Capital Credit & Collection Services, Inc. ("Capital"), for collection. Eventually, Dr. Evans assigned her claim against Mrs. Clark to the collection agency.

In connection with Mrs. Clark's alleged debt, Janine Brumley (the Capital employee responsible for collection activities on the Clark account) followed Capital's standard procedures. Relevant to the instant appeal, she first sent Mrs. Clark a collection notice on March 29, 2002. In subsequent written and oral communications, Mrs. Clark disputed the validity of the alleged debt and explained in detail billing problems she had experienced at the Evans & Sullivan Clinic.

After these communications (initiated by Mrs. Clark) Brumley sent a second notice and a letter, enclosing a copy of an itemized statement of the Clark account received from Dr. Evans. Capital claimed the itemized statement verified the debt. The second notice and verification letter were addressed to both Mrs. Clark and her husband, Jerry Clark ("Mr. Clark"). Brumley added him to the Clark account because his insurance policy had paid for Mrs. Clark's mental health treatment. On April 10, 2002, Brumley also requested authorization to file suit against the Clarks. Brumley's collection activities continued until Mr. Clark wrote to Capital. In his letter, dated April 24, 2002, he disputed the alleged debt, requested "proper verification," and directed the collection agency not to call Mrs. Clark at work or to call Mr. or Mrs. Clark at home.

On behalf of Capital, Jeffrey Hasson, the collection agency's attorney, also sent the Clarks a collection notice. That notice recited information about the Clark account that Hasson had taken from a "complaint praecipe" Capital provided

to him. On May 1, 2002, Hasson received a letter from Mr. Clark that disputed the alleged debt, requested verification, and "of course preclude[d] any phone calls to our home or employment." In response, Hasson mailed a verification letter, enclosing "documents to substantiate" Capital's claim against the Clarks. The enclosure consisted of the same itemized statement sent by Brumley.

A few months after both Capital and Hasson had received Mr. Clark's letters, Mrs. Clark called Hasson's office to request information about the alleged debt. Although the parties disagree as to the exact nature of Mrs. Clark's request, that she spoke to Hasson's secretary is undisputed. When Hasson's secretary called Capital to relay the message, Capital instructed her not to talk with debtors. Later the same day, Brumley returned Mrs. Clark's telephone call. The parties do not agree on the substance of that call, but the Clarks presented evidence that the interaction so upset Mrs. Clark that she was required to obtain therapy.

Following resolution of a state lawsuit filed by Capital, the Clarks initiated the instant action against Capital, Brumley and Hasson in the district of Oregon, alleging violations of both the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, and the Oregon Unfair Debt Collection Practices Act, Or. Rev. Stat. 646.639 *et seq.* Initially, the Clarks sought partial summary judgment on their federal claims, and Capital, Brumley and Hasson sought summary judgment on all of the Clarks' claims. After the district court heard oral argument on the original cross-motions, the Clarks filed a motion to compel additional discovery and moved for summary judgment on their state law claims.

The district court never considered fully the motion to compel on its merits. Rather, it issued an opinion and order denying the Clarks' summary judgment motions and granting Hasson's motion for summary judgment. In the same disposition, the district court denied Capital and Brumley's motion

for summary judgment as to claims relating to Brumley's oral communications with Mrs. Clark on July 30, 2002, but granted the motion as to the balance of the Clarks' claims. Later, the district court granted the Clarks' motion to compel documents relating to the July 30, 2002, conversation and denied as moot the remainder of the motion.[2]

This appeal followed.

## *DISCUSSION*

### I.  *District Court's Ruling on Cross-Motions for Summary Judgment*

We review *de novo* both the district court's interpretation of the Fair Debt Collection Practices Act ("FDCPA"), *Romine v. Diversified Collection Serv., Inc.*, 155 F.3d 1142, 1145 (9th Cir. 1998), and the district court's rulings on cross-motions for summary judgment, *see Slenk v. Transworld Systems, Inc.*, 236 F.3d 1072, 1074 (9th Cir. 2001).

### *A.*

**[1]** The Clarks argue that, because of Mr. Clark's letters "preclud[ing] any phone calls to [Mrs. Clark] . . . or to [their] home," Brumley's telephone call of July 30, 2002, constituted a violation of § 1692c(c), which provides the following:

> If a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . .

---

[2]The parties proceeded to trial on the residual issue of whether Brumley had violated the federal or Oregon law during the July 30, 2002, communication.

15 U.S.C. § 1692c(c).

With regard to Capital and Brumley, the district court granted summary judgment because it concluded that—within the scope of Mrs. Clark's request for information from Hasson—the Clarks had waived "any objection to a return call that sought merely to provide the information requested." Whether a consumer may waive a so-called "cease communication directive" appears to be an issue of first impression in this and other circuits, so we are charged with interpreting the FDCPA to determine the scope of § 1692c(c).

*1.*

Well-established canons of statutory construction provide that any inquiry into the scope and meaning of a statute must begin with the text of the statute itself. *E.g.*, *Int'l Ass'n of Machinists & Aerospace Workers v. BF Goodrich Aerospace Aerostructure Group*, 387 F.3d 1046, 1051 (9th Cir. 2004). They further caution that, "where the statute's language is plain, the sole function of the courts is to enforce it according to its terms . . . for courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* (citing *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) and *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)) (internal quotation marks omitted).

**[2]** The plain language of § 1692c(c) includes explicit exceptions permitting a debt collector subject to a cease communication directive to contact the consumer in three circumstances:

> (1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or (3) where applicable, to notify the consumer that the

> debt collector or creditor intends to invoke a speci-
> fied remedy.

15 U.S.C. § 1692c(c).[3] None of those exceptions provide that a debt collector may contact a consumer at the consumer's request, nor does the plain language of § 1692c(c) contemplate waiver.

Because the statute affirmatively designates certain manners of operation, we are counseled that, under the doctrine of *expressio unius est exclusio alterius*, these omissions are the equivalent of exclusions. *See ARC Ecology v. U.S. Dept. of Air Force*, 411 F.3d 1092, 1099-1100 (9th Cir. 2005); *In re Gerwer*, 898 F.2d 730, 732 (9th Cir. 1990) ("The express enumeration [of an exception] indicates that other exceptions should not be implied."). Nevertheless, we have long held that

> however helpful . . . rules of construction may be,
> the courts will . . . "construe the details of an act in
> conformity with its dominating general purpose, will
> read text in the light of context and will interpret the
> text so far as the meaning of the words fairly permits
> so as to carry out in particular cases the generally
> expressed legislative policy."

*Matheson v. Armbrust*, 284 F.2d 670, 674 (9th Cir. 1960) (quoting *S.E.C. v. C. M. Joiner Leasing Corp.*, 320 U.S. 344,

---

[3]The Federal Trade Commission, charged with administering the FDCPA, has taken the position that this language permits the debt collector to communicate with the consumer with respect to the debt "only once more," not three separate times, with each contact relating to one of the permissible purposes. Federal Trade Commission, *27th Annual Report to Congress on the Fair Debt Collection Practices Act (FDCPA)* 17-18 (2005), *available at* http://www.ftc.gov/reports/fdcpa05/050729fdcpa rpt.pdf.; *see also* Federal Trade Commission*, 28th Annual Report to Congress on the Fair Debt Collection Practices Act (FDCPA)* 11-12 (2006), *available at* http://www.ftc.gov/os/2006/04/P0648042006FDCPA Report.pdf.

350-51 (1943)); *see also Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992) (holding that *expressio unius* "is a rule of interpretation, not a rule of law. The maxim is 'a product of logic and common sense,' properly applied only when it makes sense as a matter of legislative purpose.") (citation omitted).

**[3]** Moreover, we are not bound by the plain meaning of a statute where its literal application will produce a result "demonstrably at odds with the intention of its drafters." *In re Been*, 153 F.3d 1034, 1036 (9th Cir. 1998) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)); s*ee also United States v. Combs*, 379 F.3d 564, 569 (9th Cir. 2004) ("[W]e are not required to interpret a statute in a formalistic manner when such an interpretation would produce a result contrary to the statute's purpose or lead to unreasonable results.") (citing *Comm'r v. Brown*, 380 U.S. 563, 571 (1965)). In the present context, strictly abiding by the plain language of § 1692c(c) would do just that. *Cf. Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 398 (6th Cir. 1998) ("While Congress appears to have intended the [FDCPA] to eliminate abusive collection practices, the language of § 1692c(c) is broader. . . .").

**[4]** Legislative history indicates that Congress enacted the FDCPA to protect consumers from "improper conduct" and illegitimate collection practices "without imposing unnecessary restrictions on ethical debt collectors." S. Rep. No. 95-382, at 1 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, 1698-99. Certainly, there is nothing inherently abusive, harassing, deceptive or unfair about a return telephone call.[4]

---

[4]Legislative history also reveals a non-exhaustive list of practices that, in enacting the FDCPA, Congress considered to be illegitimate: "threats of violence; obscene language; the publishing of 'shame lists;' harassing or anonymous telephone calls; impersonating a government official or attorney; misrepresenting the consumer's legal rights; simulating court process; obtaining information under false pretenses; collecting more than is legally owing; and misusing postdated checks." S. Rep. No. 95-382 at 2, 4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, 1698. A return telephone call, in and of itself, is disanalogous to these practices.

Indeed, to hold that a debt collector may not respond to a debtor's telephone call regarding his or her debt would, in many cases, "force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to resolve the debt —something that is clearly at odds with the language and purpose of the FDCPA." *Lewis v. ACB Business Services*, 135 F.3d at 399 (discussing a possible restriction on debt collector's ability to offer payment options in a § 1692c(c)(2) communication).

**[5]** We further note that, as a general rule, "a party may waive a benefit of a provision of a statute . . . enacted . . . for his protection." *Globe Grain & Milling Co. v. De Tweede Northwestern & Pacific Hypotheekbank*, 69 F.2d 418, 422 (9th Cir. 1934). With respect to rights secured by federal statute, "absent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). There is no such indication in the FDCPA.

Of course, "[n]ot all rights are waivable." *United States v. Perez*, 116 F.3d 840, 845 n.7 (1997) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). For instance, "waiver is not appropriate when it is inconsistent with the provision creating the right sought to be secured," *New York v. Hill*, 528 U.S. 110, 116 (2000), and "a right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." *Id.* (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704 (1945)). Because the right comes into existence only when the debtor affirmatively directs the debt-collector to cease communications, permitting the debtor to waive or revoke such a directive is hardly inconsistent with the provision creating the right or with the public policy of the FDCPA.

**[6]** Applying these principles to the protections of § 1692c(c), we hold that a debtor may waive the rights created by a cease communication directive.

**[7]** Under the generally accepted definition, a waiver is "the voluntary relinquishment . . . —express or implied—of a legal right or advantage." *Black's Law Dictionary* 1574 (7th ed. 2004); *see also Olano*, 507 U.S. at 733; *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). What constitutes a waiver depends, in the first instance, on the nature of the right at issue. *See Hill*, 528 U.S. at 114. Where waivers are permissible, they are often enforced only if the waiver was "knowing" or "intelligent," which means the individual has "sufficient awareness of the relevant circumstances and likely consequences" of his decision, *Brady v. United States*, 397 U.S. 742, 748 (1970). *See generally United States v. Navarro-Botello,* 912 F.2d 318, 321 (9th Cir. 1990) ("A *knowing* and voluntary waiver of a statutory right is enforceable.") (emphasis added); *United States v. Michlin*, 34 F.3d 896, 898 (9th Cir. 1994) ("A knowing and voluntary waiver is a prerequisite to our enforcement of a plea agreement waiving appellate rights."); *Leonard v. Clark*, 12 F.3d 885, 889-90 (9th Cir. 1993) ("First Amendment rights may be waived upon clear and convincing evidence that the waiver is knowing, voluntary and intelligent.").

**[8]** We conclude that a heightened standard of voluntariness is appropriate here because the statute now before us measures the behavior of debt collectors under the rubric of the "least sophisticated debtor." *E.g.*, *Baker v. G. C. Services Corp.*, 677 F.2d 775, 778 (9th Cir. 1982); *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988). This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous." *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993) (internal quotations and citations omitted). Focusing on that level of sophistication, we will enforce a waiver of the cease communication directive only where the least sophisticated debtor

would understand that he or she was waiving his or her rights under § 1692c(c).[5]

Although we have not before employed the least sophisticated debtor standard to evaluate the meaning a debtor would attach to his or her own conduct, we are convinced that its use is appropriate here. We find support for our decision from the manner in which we have already employed the standard. In judging the actions of a debt collector, we invariably ask whether the information it provided was or its actions were confusing or misleading. *E.g.*, *Terran v. Kaplan*, 109 F.3d 1428, 1432-33 (9th Cir. 1997). Quite simply, we seek to ensure that even the least sophisticated debtor is able to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. *Cf. Terran*, 109 F.3d at 1434 (debt collector did not violate FDCPA because it did "not threaten or encourage the least sophisticated debtor to waive his statutory right[s]"); *Swanson*, 869 F.2d at 1226 (debt collector's notice violated the FDCPA because it encouraged debtor to "ignore his right to take 30 days to verify his debt and act immediately"). That goal—and, therefore, the least sophisticated debtor standard—is no less important or relevant when considering the actions of the debtor than when considering the actions of a debt collector.

Most important, because the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—

---

[5]Out of an abundance of caution, we further note what should be obvious: a consumer's consent cannot waive protection from the practices the FDCPA seeks to eliminate, such as false, misleading, harassing or abusive communications. Permitting such a waiver would violate the public policy goals pursued by the FDCPA. *See Hill*, 528 U.S. at 116; *accord Johnson v. Eaton*, 873 F. Supp. 1019, 1028 (M.D. La. 1994) (finding that an alleged waiver defense could not "operate as a waiver of the plaintiff's protection against receiving false or misleading communications")."

to bear the brunt of the risk.**⁶** As we have oft repeated, it does not seem "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393 (1965); *see also Swanson*, 869 F.2d at 1228. Other than as permitted by § 1692c(c), a debt collector who has received a cease communications order from a debtor must not contact the debtor unless it has received a clear waiver of that order.

*2.*

**[9]** Applying our newly articulated waiver standard to the facts before us, it is obvious that even the least sophisticated debtor would recognize that Mrs. Clark's request for information constituted consent for Hasson, Capital's attorney, to return Mrs. Clark's telephone call in order to provide the specific information she requested. In other words, no reasonable trier of fact could conclude that Mrs. Clark did not waive the cease communications directive with respect to Hasson.

**[10]** Whether Mrs. Clark's actions also constituted a waiver of the cease communications directive as to Capital and Brumley is a more difficult question. In this regard, we decline to create a rule that by waiving the protection of § 1692c(c) as to one debt collector, a debtor waives that protection with regard to any other debt collector with which that debt collector may be collaborating to collect the same debt.**⁷**

---

**⁶**Although we appreciate that "common sense"—the dissent's preferred standard—is an attractive and necessary first step to judging the actions of debtors and debt collectors alike, we are not sure that "common sense" is sufficiently common to provide any reasoned and uniform basis to guide individual conduct and, then, review. The dissent's common sense led it to be assured that a request for information from one individual welcomed a response from another, but, apparently, Mrs. Clark's did not.

**⁷**To hold otherwise would—rather than support the remedial purpose of the FDCPA—pave the way for novel abusive practices necessitating fur-

The instant case justifies perfectly our decision. It is obvious that Mrs. Clark did not realize that by calling Hasson, she was consenting to a return telephone call from Brumley. Crediting Mrs. Clark's characterization of her interactions with Brumley, it is perfectly clear that Mrs. Clark's choice of Hasson over Brumley (or any other employee at Capital) was not fortuitous. That Capital was a better source of information about the Clark account is undisputed; still, Mrs. Clark chose to call Hasson because her mental health suffered following her talks with Brumley.

**[11]** The subjective reason for Mrs. Clark's (or any other debtor's) behavior, however, is not the focus of the inquiry. The question that must be answered is this: "Was it clear from Mrs. Clark's request for information that she consented to a return telephone call from *any* debt collector?" We know that Mrs. Clark did not give her consent to receive communications directly to the debt collector, but whether she otherwise demonstrated her waiver of the cease communication directive with respect to Capital and Brumley is unclear. As we noted, the parties offered conflicting testimony with regard to the substance of Mrs. Clark's request. Thus, the answer is inextricably linked to disputed issues of fact, which we do not decide on appeal, and partial summary judgment in favor of Capital and Brumley was improper.[8]

---

ther litigation. Debt collectors working together could routinely attempt to bypass the strictures of § 1692c(c). As the dissent notes, a return telephone call is not inherently deceptive or harassing; however, neither are many other practices proscribed by the FDCPA. It is the task of courts to determine whether, in light of the facts before it, a particular telephone call violated the FDCPA. Though the dissent finds it "nonsensical" to allow one debt collector to return the phone call while preventing that debt collector's cohorts to do so, we find it nonsensical to create needless loopholes that work to the disadvantage of the individuals the FDCPA was enacted to protect.

[8]The parties' disagreement on the substance of the July 30, 2002, conversation also demonstrates that Capital's and Brumely's contention that

**[12]** Conversely, the district court properly granted summary judgment to Hasson. First, under the principles just set forth, Mrs. Clark waived the cease communication directive as to Hasson. *See* op. *supra* at 10150. Second, as a matter of law, Hasson could not be held liable for the actions of his client.

Although we have recognized vicarious liability under the FDCPA, *see Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994) (holding that "Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken"), there is no legal authority for the proposition that an attorney is generally liable for the actions of his client. Nor are we impressed that the facts underlying this case provide any reason for holding Hasson liable for Capital's actions. Under general principles of agency—which form the basis of vicarious liability under the FDCPA, *see Newman v. Checkrite California*, 912 F. Supp. 1354, 1370 (E.D. Cal. 1995)—to be liable for the actions of another, the "principal" must exercise control over the conduct or activities of the "agent." *See Restatement (Second) of Agency* § 1 (1958). The Clarks offered no evidence upon which a reasonable trier of fact could conclude that Hasson exercised control over Capital or Brumley. In fact, the evidence demonstrates the opposite: Hasson's office was instructed by Capital not to speak with debtors and complied with that instruction. Thus, summary judgment was proper.

*B.*

**[13]** The Clarks also argue that Capital and Hasson failed

---

summary judgment was proper because the communication fell within the exception to § 1692c(c) for invoking specified remedies that are ordinarily invoked by the debt collector, *see* 15 U.S.C. § 1692c(c)(2), is without merit. Clearly, a genuine issue of material fact exists. *Slenk*, 236 F.3d at 1074.

to verify properly the alleged debt, violating §1692g.[9] As this contention is without merit, summary judgment was proper.

**[14]** In *Mahon v. Credit Bureau of Placer County Inc.*, we described one way to provide proper verification:

> [T]he Credit Bureau, when it received the [verification] request, promptly contacted [the creditor's] office, verified the nature and balance of the outstanding bill, learned that monthly statements had been sent from [the creditor's] office to the [debtors] for over two years, and established that the balance was still unpaid. The Credit Bureau then promptly conveyed this information to the [debtors], along with an itemized statement of the account.

171 F.3d 1197, 1203 (9th Cir. 1999). Now, the Clarks urge us to hold that *Mahon* sets a standard below which a debt collector's verification efforts must not fall. We decline to impose such a high threshold. Rather, we adopt as a baseline the more reasonable standard articulated by the Fourth Circuit in *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999). At the minimum, "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Id.* at 406 (citing *Azar v. Hayter*, 874 F. Supp. 1314, 1317 (N.D. Fla.), *aff'd*, 66 F.3d 342 (11th Cir. 1995)).

Undisputed facts demonstrate that, upon the Clarks' request for verification, Capital obtained information from Dr. Evans about the nature and balance of the outstanding bill and provided the Clarks with documentary evidence in the form of the itemized statement. Hasson also sent the Clarks a copy of the itemized statement, which he had received from Capital.

---

[9]The pertinent portion of § 1692g requires a debt collector to "obtain verification of the debt" upon the request of the consumer, 15 U.S.C. § 1692g(a)(4), and to cease collection efforts until the debt collector obtains verification and mails it to the consumer, 15 U.S.C. § 1692g(b).

**[15]** Within reasonable limits, Capital and Hasson were entitled to rely on their client's statements to verify the debt. *Accord Bleich v. Revenue Maximization Group, Inc.*, 233 F. Supp.2d 496, 500-01 (E.D.N.Y. 2002), *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991) ("Generally, a debt collector may reasonably rely upon information provided by a creditor who has provided accurate information in the past."). Moreover, the FDCPA did not impose upon them any duty to investigate independently the claims presented by Dr. Evans. *Accord Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996). Capital's and Hasson's actions, then, satisfied the requirement that they confirm with their client the particular amount being claimed. *Chaudhry*, 174 F.3d at 406 (holding that debt collectors do not have to "vouch for the validity of the underlying debt"), and they did not violate §§ 1692g(a)(4) or 1692g(b). No reasonable trier of fact could conclude otherwise.

## C.

**[16]** Our inquiry into the verification of the debt does not end with the conclusion that neither Capital nor Hasson violated § 1692g's verification provisions. The Clarks also argue that the evidence establishes conclusively that Capital and Hasson knew the debt alleged by Dr. Evans was invalid and misstated, amounting primarily to a violation of § 1692e(2)(a), which prohibits the false representation of "the character, amount, or legal status of any debt."

### 1.

**[17]** Whether a violation of § 1692e may be predicated upon conduct that is neither knowing nor intentional appears to be an issue of first impression in the Ninth Circuit, so again we must thrust ourselves into the murky waters of statutory interpretation. As before, we start with the text of the statutory provision at issue:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . .
>
> (2) The false representation of—
>
> > (A) the character, amount, or legal status of any debt; or
> >
> > (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

15 U.S.C. § 1692e. Though the plain language of § 1692e does not include an intent element, it employs words—"false, deceptive, or misleading"—that connote volition.[10] Examining the provision in isolation, then, it is reasonable to conclude—as have some other courts—that "[t]o successfully state a claim pursuant to § 1692e(2), [the plaintiff] must show that [the debt collector] knowingly or intentionally misrepresented the amount of the debt in its collection letters." *McStay v. I.C. System, Inc.*, 174 F. Supp.2d 42 (S.D.N.Y. 2001) (citing *Stonehart v. Rosenthal*, No. 01 Civ. 651, 2001 WL 910771, *6 (S.D.N.Y. Aug. 13, 2001) ); *see also Bleich*, 233 F. Supp.2d at 500-01; *Ducrest*, 931 F. Supp. at 462; *Beattie*, 754 F. Supp. at 392.

---

[10]False may be defined as "intentionally untrue . . . adjusted or made so as to deceive . . . intended or tending to mislead," *Webster's Ninth New Collegiate Dictionary* 447 (1987). Something is deceptive if it tends or has the power to "give a false impression." *Id.* at 329. And, something is misleading if it "lead[s] in a wrong direction or into a mistaken action or belief often by deliberate deceit." *Id.* at 759. Of course, false, deceptive, and misleading each have innocent definitions as well. *E.g.*, *id.* at 447 (also defining "false" simply as "not true" or "inconsistent with the facts").

However, "[i]n analyzing a statutory text, we do not look at its words in isolation. Textual exegesis necessarily is a holistic endeavor. . . . Thus, we look not only to the language itself, but also to . . . the broader context of the statute as a whole." *BF Goodrich*, 387 F.3d at 1051 (internal quotations and citations omitted). Indeed, elsewhere we have explained that "[t]he words of a statute are, of course, dead weights unless animated by the purpose of the statute." *Favish v. Office of Indep. Counsel*, 217 F.3d 1168, 1171 (9th Cir. 2000).

**[18]** To that end, we are "obliged to give effect, if possible, to every word Congress used," *Baker*, 677 F.2d at 778 (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)), and "[w]e have consistently . . . reject[ed] interpretations that would render a statutory provision surplusage or a nullity," *In re Cervantes*, 219 F.3d 955, 961 (9th Cir. 2000). *See also id.* (noting that "statutes should not be construed in a manner which robs specific provisions of independent effect") (citations omitted). This requirement demands that we pursue consistency not only within a particular provision but also among the provisions of the FDCPA. *See Am. Bankers Ass'n v. Gould*, 412 F.3d 1081, 1086 (9th Cir. 2005) ("Our goal in interpreting a statute is to understand the statute as a symmetrical and coherent regulatory scheme and to fit, if possible, all parts into a harmonious whole") (internal quotation and citation omitted).

**[19]** Parsing the FDCPA with the aim of placing § 1692e in its proper context, we encounter § 1692k(c), which provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

As our colleagues in other circuits have concluded, this broad language seems to make the FDCPA a strict liability statute. *See Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238-39 (5th Cir. 1997); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996); *see also Irwin v. Mascott*, 112 F. Supp.2d 937 (N.D. Cal. 2000); *Pittman v. J.J. Mac Intyre Co. of Nevada, Inc.*, 969 F. Supp. 609 (D. Nev. 1997); *Kuhn v. Account Control Technology, Inc.*, 865 F. Supp. 1443, (D. Nev. 1994).

Latching onto that conclusion, the Seventh Circuit has held that "§ 1692e applies even when a false representation was unintentional." *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *see also Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (holding unintentional misrepresentation that debtor was obligated to pay a debt discharged in bankruptcy violated FDCPA); *Patzka v. Viterbo College*, 917 F. Supp. 654, 658-59 (W.D. Wis. 1996) (holding that an attempt to collect fee prohibited by law and threat to take action that could not be taken legally violated FDCPA). The Second Circuit has adopted a similar position. *See Russell*, 74 F.3d at 33, 36 (holding that sending contradictory notices violated FDCPA even though plaintiff did not offer proof of intent); *Cacace v. Lucas*, 775 F. Supp. 502, 505-06 (D. Conn. 1990) (holding that an overstatement of debt "that was a mistake" violated FDCPA).

**[20]** We agree with the Second and Seventh Circuits. Requiring a violation of § 1692e to be knowing or intentional needlessly renders superfluous § 1692k(c). *See, e.g.*, *Security Pac. Nat'l Bank v. Resolution Tr. Corp.*, 63 F.3d 900, 904 (9th Cir. 1995) ("We must avoid a construction which renders any language of the enactment superfluous."); *Hearn v. W. Conference of Teamsters Pension Tr. Fund*, 68 F.3d 301, 304 (9th Cir. 1995) ("Only where a sensible result isn't reachable may we resort to the drastic step of ignoring . . . statutory lan-

guage. . . .") (citation omitted).[11] Instead, intent is only relevant to the determination of damages. *Taylor*, 103 F.3d at 1238, 1239 ("the fact that violations were innocuous and not abusive may be considered only in mitigating liability, and not as defenses"); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993) ("the degree of a [debt collector's] culpability may only be considered in computing damages"). We are convinced that this reading of the FDCPA is more in harmony with the remedial nature of the statute, which requires us to interpret it liberally. *Cf., e.g.*, *Eby v. Reb Realty, Inc.*, 495 F.2d 646, 650 (9th Cir. 1974) (concluding the remedial purpose of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, required liberal construction); *accord Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) ("Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer.").

At summary judgment, the Clarks presented evidence purporting to establish that the debt collectors' reliance on Dr. Evans' representations regarding their debt was unreasonable. Notes taken by Brumley indicated that she knew of the serious bookkeeping difficulties and billing problems Dr. Evans' office was experiencing. Arguably, Brumley's collection

---

[11]As thoroughly discussed in *Kaplan v. Assetcare, Inc.*, 88 F. Supp.2d 1355 (S.D. Fla. 2000), that "Congress took care to require an element of knowledge or intent in certain portions of the FDCPA where it deemed such a requirement necessary" further supports our conclusion that § 1692k(c) generally makes the FDCPA a strict liability statute. *Id.* at 1362; *see, e.g.*, 15 U.S.C. § 1692d(5) ("Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously *with intent to* annoy, abuse, or harass any person at the called number.") (emphasis added); 15 U.S.C. § 1692f(3) ("The solicitation of a debt collector of any postdated check . . . *for the purpose of* threatening or instituting criminal prosecution.") (emphasis added); 15 U.S.C. § 1692c ("a debt collector may not communicate with a consumer in connection with the collection of any debt at any unusual time or place . . . *known or which should be known* to be inconvenient to the consumer.") (emphasis added). Here, we are persuaded that Congress employed such specific qualifiers to limit the more general language of § 1692k. *See Hearn*, 68 F.3d at 304.

notes also evidenced her concern over possible inconsistencies between the debt Dr. Evans claimed with respect to the Clark account and the itemized statement Dr. Evans provided. Affidavits from other patients of the Evans & Sullivan Clinic attested to successful litigation over previous false claims involving Dr. Evans, as well as Capital and Hasson. As discussed below, the Clarks also moved to compel the production of additional documents allegedly relating to this claim. Given the district court's failure to consider the merits of that motion, discussed below, we need not determine whether this evidence sufficed to withstand summary judgment.

**[21]** Pursuant to § 1692k(c)'s bona fide error defense, a debt collector is not liable for its violations of the FDCPA if "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Logically, if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors. On the other hand, the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that is different from the creditor's report. *Accord Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (finding no violation because the creditor listed incorrectly the amount owed when it referred the debt to the debt collector); Ralph C. Clontz, Jr., *Federal Fair Lending and Credit Practices Manual* ¶ 14.09[3][a][ii] ("[A] debt collector cannot intentionally claim an amount greater than is actually owed in order to get the consumer to admit owing the true amount of the debt."). This narrow exception to strict liability under the FDCPA is an affirmative defense, so Capital, Brumley and Hasson bore the burden of proof at summary judgment. *Fox*, 15 F.3d at 1514. Yet, they presented no evidence to demonstrate that their reliance on Dr. Evans' representations was reasonable or that they maintained procedures to avoid errors. Thus, the debt collectors were not entitled to summary judgment on

either the alleged violation of § 1692e or the affirmative defense.

## 2.

The Clarks also argue that seeking to collect a debt known to be invalid or insufficiently verified constitutes a violation of § 1692d (which states debt collectors cannot "harass, oppress, or abuse" consumers in connection with the collection of a debt), § 1692f(1) (prohibiting the collection of a debt not authorized by law), and § 1692g(a)(1) (which requires the debt collectors to inform consumers of the amount of the debt). For the reasons discussed above, appellants may have raised triable issues of material fact precluding summary judgment on these issues, as well.

[22] Although we have never squarely addressed the issue of overlapping liability under the FDCPA, our prior cases leave us convinced that one action can give rise to multiple violations of the Act. In *Fox v. Citicorp*, we reversed summary judgment on a debtor's § 1692d claim because she had presented evidence that the debt collector had called her at work despite her requests that it not do so, which violates § 1692c(a)(1). 15 F.3d at 1516 n.10. In so holding, we noted specifically that "it is not unusual for an action to violate more than one FDCPA provision." *Fox*, 15 F.3d at 1516 n.10 (citing Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,101 (Fed. Trade Comm'n Dec. 13, 1988) ("In many cases several different sections or subsections of the FDCPA may apply to a given factual situation.")). And, it appears that we (as well as other courts) routinely have allowed debtors to pursue causes of actions under multiple sections of the FDCPA, even though each violation was based upon the same circumstances. *See, e.g.*, *Renick v. Dun & Bradstreet Receivable Management Services*, 290 F.3d 1055, 1057-58 (9th Cir. 2002) ("Because the notice did not violate the requirements of 15 U.S.C. § 1692g(a), it would not

support a finding that [debt collector] used "false representation or deceptive means to collect or attempt to collect any debt."); *Charles v. Lundgren & Associates, P.C.*, 119 F.3d 739 (9th Cir. 1997) (same course of conduct stated claim for violations of three sections of FDCPA); *accord Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004) (contemplating violations under §§ 1692e, 1692f, and 1692g for one collection letter).

**[23]** We have little difficulty accepting the wisdom of our conclusion in *Fox* and the Federal Trade Commission commentary upon which it relied. For instance, a trier of fact would certainly be reasonable in finding that, if Brumley *knew* the debt she was collecting was invalid, the natural consequence of repeatedly calling Mrs. Clark to demand payment of that debt was to "harass, oppress, or abuse" Mrs. Clark. *See* 15 U.S.C. § 1692d. In the same way, when Capital pursues a debt it *knows* is overstated, Capital simultaneously misrepresents the debt in contravention of § 1692e *and* seeks to collect an amount that is not permitted by law in contravention of § 1692f(1).[12]

Moreover, as the Federal Trade Commission has explained, the applicability to the same conduct of multiple subsections of the Act "results from the effort by Congress in drafting the FDCPA to be both explicit and comprehensive, in order to limit the opportunities for debt collectors to evade the underlying legislative intention." 53 Fed. Reg. at 50,101. We see no reason to second guess the decision of Congress.

**[24]** Still, we cannot believe that, in its quest to avoid loopholes, Congress intended to create windfalls. Thus, we con-

---

[12]That it is not unusual for an action to violate more than one FDCPA provision, *Fox*, 15 F.3d at 1517 n.10, in no way implies that a violation of one provision of the FDCPA *automatically* constitutes a violation of another. Rather, the applicability of more than one section of the Act depends on the particular factual underpinnings of each violation.

clude that the fact that numerous violations of the FDCPA are predicated upon one set of circumstances *should* be considered and that it is best considered during the calculation of damages. *See* 15 U.S.C. § 1692k(a)(1) & (2)(A) (limiting damages to the actual damages suffered by debtor and additional damages, not to exceed $1,000); 15 U.S.C. § 1692k(b)(1) (including "nature of . . . noncompliance" as factor to be considered when determining damages).

## II.    Failure To Rule on Motion To Compel Discovery

Finally, we address the Clarks' contention that the district court erred by ruling on the cross-motions for summary judgment before ruling on the Clarks' motion to compel additional discovery. Generally, the district court's refusal to permit further discovery is reviewed for an abuse of discretion. *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1985). However, by denying as moot the bulk of appellants' motion without considering its merits, the district court failed to exercise its discretion, so we review *de novo*. *Id.* at 1518-19.

**[25]** Among the relevant information the Clarks' motion to compel sought to elicit were Capital's procedures for debt verification and a document identified at Brumley's deposition that purportedly provides additional verification of the debt beyond the itemized statement. It is neither necessary nor appropriate for us to pass on the merits of the motion. *Garrett*, 818 F.2d at 1519 n.4. Nonetheless, it is obvious that the evidence the Clarks sought could have provided "potentially favorable information," particularly relating to appellants' claim that appellees knew that the debt they sought to collect was invalid. *Id.* ("summary judgment should not be granted while opposing party timely seeks discovery of potentially favorable information") (citing *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir. 1983)); *see also VISA Intern. Service Ass'n v. Bankcard Holders of America*, 784 F.2d 1472,

1475-76 (9th Cir. 1986) (discussing the general rule and exceptions thereto).

**[26]** In other circumstances, we might be inclined to excuse this error: had the Clarks failed to pursue the discovery sought in their motion to compel, *cf. Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986) ("the movant cannot complain if it fails to pursue discovery diligently before summary judgment"), had they moved the court to compel discovery only *after* the deadlines for discovery or submission of dispositive motions had passed, or had they waited until after the district court ruled on the motions for summary judgment, *cf. Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999) (explaining that motion to compel filed during the discovery period would rarely be considered untimely). However, they did not. The Clarks actively pursued the information until the eve of oral argument on the cross motions for summary judgment. They also requested that the summary judgment motions be continued pending the completion of discovery. In such circumstances, the district court was required to determine the merits of the Clarks' pending discovery motion before ruling on the summary judgment motions. *Garrett*, 818 F.2d at 1519.

## *CONCLUSION*

This case presents a complicated web of problems that has required us to address a litany of issues for which there is a dearth of applicable precedent. In so doing, we have endeavored to adopt a construction of the FDCPA that recognizes "there is room within the [FDCPA] for ethical debt collectors to make occasional unavoidable errors," *Beattie*, 754 F. Supp. at 392, and avoids imposing unreasonable restrictions on the collection of debt. Simultaneously, we wish to reinforce that the broad remedial purpose of the FDCPA is concerned primarily with the likely effect of various collection practices on the minds of unsophisticated debtors.

**AFFIRMED**, in part, **REVERSED**, in part, and **REMANDED** for further proceedings consistent with this opinion.

---

O'SCANNLAIN, Circuit Judge, concurring in part, dissenting in part:

While I agree generally with the Court's desire "to reinforce that the broad remedial purpose of the [Fair Debt Collection Practices Act] is concerned primarily with the likely effect of various collection practices on the minds of unsophisticated debtors," and while I specifically join parts I.B., I.C., and II. of the majority's opinion, I must respectfully dissent from part I.A. I cannot agree that Mrs. Clark's waiver of § 1692c(c)'s protections did not extend to Janine Brumley ("Brumley") or Capital Credit & Collection Service ("Capital"); the trial court properly concluded that Brumley did not violate § 1692c(c) by returning Mrs. Clark's call. For that reason, I must dissent to that extent.

I

The majority properly holds that a debtor may waive the protections of 15 U.S.C. § 1692c(c), which requires a debt collector to cease communication with the debtor upon written request. Here, Mrs. Clark did so by initiating a communication with Jeffrey Hasson ("Hasson") to obtain information. The majority extends her waiver only to Hasson, but in my view, the waiver should also apply to Brumley and Capital.

A

Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o, in order to eliminate "abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abu-

sive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). As the majority acknowledges, "there is nothing inherently abusive, harassing, deceptive or unfair about a return phone call." Maj. Op. at 10148. This is so regardless of who makes the call. The fact that Brumley returned Mrs. Clark's call instead of Hasson does not suddenly transform the call into an abusive practice. The majority recognizes the possibility of waiver of § 1692c(c)'s protections because failure to do so would be inconsistent with the purposes of the FDCPA. Refusing to extend Mrs. Clark's waiver to Brumley and Capital is similarly inconsistent.

B

The majority argues that a waiver of § 1692c(c)'s protections must be knowing and intelligent, Maj. Op. at 10150, and I do not disagree. But, in any conceivable case, a debtor who phones a debt collector to request information must be said to have "sufficient awareness of the relevant circumstances and likely consequences" of her action, *United States v. Larson*, 302 F.3d 1016, 1021 (9th Cir. 2002), namely that someone will return the call with the requested information. In fact, one would almost certainly expect the person with the information to be the one to place the return call. But the majority concludes that the "least sophisticated debtor" would not have expected Brumley, or anyone at Capital, to return Mrs. Clark's call. In my view, the majority errs in applying such standard.

Use of the "least sophisticated debtor" standard here, to determine the meaning a debtor would ascribe to *her own actions*, is unique. Previously, we have employed it only to determine whether a debt collector's communications to a debtor violate the FDCPA. *See Dunlap v. Credit Prot. Ass'n, L.P.*, 419 F.3d 1011, 1012 (9th Cir. 2005) (judging "[t]he impact of language alleged to violate the FDCPA"). To that end, we examine communications with an eye towards the "tendency of language to deceive" the "least sophisticated

debtor." *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982); *see also Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1057 (9th Cir. 2002) (holding that a communication "was not misleading even to the least sophisticated debtor"); *Terran v. Kaplan*, 109 F.3d 1428, 1431 (9th Cir. 1997) (stating that "whether the initial communication violates the FDCPA depends on whether it is likely to deceive or mislead a hypothetical 'least sophisticated debtor' " (internal quotation marks and citation omitted)); *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (stating that a communication violates the FDCPA if "likely to deceive or mislead a hypothetical 'least sophisticated debtor' "). We have also used it to determine whether such a debtor would understand a debt collector's communication as a threat. *See Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988).

Significantly, *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993), cited by the majority, notes that the "least sophisticated consumer" standard serves a dual purpose. "[I]t (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* When used to determine whether a debtor "would understand that he or she was waiving his or her rights under § 1692c(c)," the standard serves neither of these purposes. Maj. Op. at 10150-51. Because returning a debtor's call is not a deceptive practice, I see no reason for the majority's novel application of the "least sophisticated debtor" standard here.[1]

---

[1]Even were the "least sophisticated debtor" standard appropriate, the majority errs by injecting a subjective element into what is, by its own admission, an "objective" standard. Majority Op. at 10151. Mrs. Clark's subjective intentions and expectations are not relevant; nor is her characterization of her previous interactions with Brumley. Mrs. Clark may have been upset by Brumley's collection efforts; however, § 1692c(c), and the FDCPA generally, prohibits only deceptive and abusive practices, not any

## C

Indeed, I see no reason to use any standard other than common sense. Mrs. Clark called Hasson's office seeking information concerning a specific debt, despite her earlier cease communication instruction. In my view, by doing so, Mrs. Clark waived her right to avoid a return communication—albeit one specifically limited to providing the information requested. Although Hasson and Brumley's employer, Capital, are different entities, they were working together to collect the specific debt about which Mrs. Clark inquired. Allowing one of the parties to return the call while preventing the others from doing so is nonsensical, particularly where one party has better access to the information. Here, Capital, and Brumley specifically, had the information Mrs. Clark requested; thus, Mrs. Clark's waiver should, as a matter of common sense, apply to both Capital and Brumley.[2]

In my view, then, Capital and Brumley did not violate § 1692c(c) of the FDCPA by returning Mrs. Clark's call, and the district court's grant of summary judgment on the issue was proper.

---

and all actions that upset debtors. Thus, Mrs. Clark's alleged need for therapy is relevant only on the issue of damages flowing from actual violations of the FDCPA. Her unhappiness with the collection process generally is not relevant to the issue of whether her limited waiver of § 1692c(c) should extend to Brumley and Capital.

[2]A debtor might claim that a debt collector exceeded the scope of the waiver or was abusive. Abusive conduct violates § 1692d of the FDCPA, and a debt collector who exceeds the scope of a waiver might still violate § 1692c(c). However, it is unnecessary to reach that question because, although the majority states that the parties dispute the substance of Brumley's return call, this specific issue was tried to a jury following the district court's partial grant of summary judgment. The jury found that Brumley was not abusive and did not exceed the scope of Mrs. Clark's information request.

## II

Because Mrs. Clark waived her cease-communication directive as to both Hasson and Brumley, I would affirm the district court's grant of summary judgment to all parties on the Clarks' § 1692c(c) claim.