Howard **TURNER**; Mary Turner; Bill Oskowski; Marisa Oskowski, Plaintiffs–Appellees,

v.

**BURLINGTON NORTHERN SANTA FE RAILROAD COMPANY,** a Delaware Corporation, Defendant–Appellant.

No. 02–35270.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 2003.

Filed Aug. 11, 2003.

Jeff Hedger, Hedger Moyers, Billings, Montana, for the defendant-appellant.

Kurt M. Jackson, Hoyt & Blewett, Great Falls, Montana, for the plaintiffs-appellees.

Before: LAY,* FERGUSON, and GOULD, Circuit Judges.

LAY, Circuit Judge.

Burlington Northern Santa Fe Railroad Company ("BNSF") appeals from a jury award granted to Howard and Mary Turner and Bill and Marisa Oskowski. The Turners and the Oskowskis filed a negligence action against BNSF after a range fire that started on BNSF's right-of-way destroyed their real and personal property. On appeal, BNSF makes two assertions of error: (1) the district court improperly excluded portions of its expert's testimony, and (2) the Plaintiffs did not provide sufficient evidence to support their claims for emotional distress. We affirm the judgment on the verdict.

## I. Facts and Background

On October 31, 1999, a range fire started on BNSF's right-of-way outside of Wolf Point, Montana. The fire spread quickly across the range and destroyed the Turners' and Oskowskis' mobile homes along with several other structures on the property. The fire also destroyed all of their personal property and killed their family pets.

The Turners and Oskowskis filed suit in federal district court on March 16, 2000, alleging that sparks from BNSF railroad cars caused the fire. The complaint sought damages for property loss and for emotional distress. After a two-week trial in November 2001, a jury found BNSF liable and awarded damages in the amount of $838,500.00 for loss of property, emotional distress, and lost earnings. Posttrial, BNSF moved for a new trial, for judgment as a matter of law, and to amend the judgment concerning Howard Turner's emotional distress claim. The district court denied all these motions. BNSF appeals.

### A. Expert Witness

BNSF contacted Donald R. Howard, a fire investigator, to investigate the cause of the fire. According to Howard, the fire originated in one of several debris piles located within BNSF's right-of-way. He took samples of the debris piles and sent them to Armstrong Forensic Laboratory ("lab") in Arlington, Texas for analysis. The lab's report stated that one of the debris samples contained a mixture of petroleum distillate consistent with gasoline. Based on this report, Howard was prepared to testify that the fire resulted from arson.

At trial, the district court determined that Howard's testimony was not permissible under Federal Rule of Evidence 703 [1]

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1.  Federal Rule of Evidence 703 states:
    The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting

because Howard relied on the lab report as substantive evidence to prove that the fire was started by gasoline. Consequently, BNSF did not present Howard at trial.

### B. The Emotional Distress Claims

As evidence of the Oskowskis'[2] emotional distress, they testified that when Bill approached Marisa to tell her about the fire, he took along two friends because he was unsure of his own emotional state. Marisa's reaction was highly emotional. Bill testified that Marisa could not visit the scene of the fire for almost a week because of her emotional state. When she finally did visit the scene, she testified that it looked like a "war zone," and that she stated crying hysterically and could not stop.

In addition, the record shows that Bill Oskowski was seen by doctors after the fire to tend to the emotional effects he was feeling. Marisa also testified that she no longer feels safe in her own home, and she lives in fear that a fire will happen again. She testified that memories of the fire continue to cause her emotional distress.

Howard Turner was at home when the fire erupted. He fought the fire in an attempt to save his home and was eventually rescued by a local police officer. The officer testified that the smoke was so thick around Howard Turner that it was a threat to his life. After the fire, Howard Turner was shaken and distraught. He was seventy-nine years old at the time of the fire. Howard Turner testified that he considered the Wolf Point residence to be his last residence, and he was greatly distressed by its final destruction.

the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

## II. The Expert Testimony

BNSF argues that it is entitled to a new trial because the district court improperly excluded parts of Donald Howard's testimony. BNSF asserts that Rule 703 permits experts to rely on the reports of others, even if the report itself is not admissible. We review a district court's evidentiary rulings for an abuse of discretion. *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir.1999). Reversing the jury's verdict is appropriate only when "the evidentiary error affects a party's substantial rights." *Heyne v. Caruso*, 69 F.3d 1475, 1478 (9th Cir.1995).

Rule 703 allows an expert to formulate an opinion based on facts or data which are "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject...." Fed.R.Evid. 703. In December 2000, Rule 703 was amended and now requires a court to ask two questions when evaluating otherwise inadmissible evidence. The first question is "whether the facts are of a type reasonably relied on by experts in the particular field." *Bauman v. Centex Corp.*, 611 F.2d 1115, 1120 (5th Cir.1980). The second question is whether the probative value of the underlying data substantially outweighs its prejudicial effect. Fed.R.Evid. 703.

There has been much written in this circuit on what type of outside evidence a particular expert would reasonably rely upon. *See e.g. Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1262 (9th Cir. 1984) (holding expert could not rely on audit reports to establish the truth of what they assert). However, application of the 2000 amendment to Fed.R.Evid. 703 has not yet been addressed by this court. The

**2.** The Turners and Oskowskis lived on the same ten acre property. The Turners are Marisa Oskowski's parents.

amended rule requires a court to determine whether the probative value of the evidence outweighs the prejudice inflicted. The presumptive evidence that otherwise is inadmissible will be kept out unless the court determines that any potential prejudice is *substantially outweighed* by the probative value. Fed.R.Evid. 703 (emphasis added).

The legislative history behind this amendment demonstrates that the drafters considered the new addition to create such a presumption. The committee note on the 2000 amendment reads in part: "The amendment provides a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose, when that information is offered by the proponent of the expert." *See* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 703.05 (2d ed.2003) (relaying the committee notes verbatim).

■ Here, the lab report was the only evidence of gasoline in the soil. Howard used the report not as data upon which an expert in his field would reasonably rely in forming an opinion, but rather intended to use it as substantive evidence of his ultimate conclusions that the fire was intentionally created by pouring gasoline into the soil. The lab report was otherwise inadmissible hearsay evidence in the absence of foundation testimony by the laboratory that conducted the testing.

The prejudice that would result from admission of this evidence was substantial, whereas its probative value was minimal. Because the probative value of this otherwise inadmissible evidence does not outweigh its prejudicial effect, our inquiry is ended under Fed.R.Evid. 703. The district court did not abuse its discretion in refusing to admit Howard's testimony on this matter.

### III. The Oskowskis' Emotional Distress Claims

■ BNSF asserts that the district court erred in refusing to overturn the jury's verdict in favor of the Oskowskis. It claims that the Oskowskis did not present enough evidence to prove their claim for negligent infliction of emotional distress ("NIED"). To prevail, BNSF must show that "there [was] no legally sufficient basis for a reasonable jury to find for [the plaintiffs] on that issue." *Costa v. Desert Palace, Inc.,* 299 F.3d 838, 859 (9th Cir. 2002) (en banc) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). We review this question de novo. *See White v. Ford Motor Co.,* 312 F.3d 998, 1010 (9th Cir.2002).

■ Montana law provides that NIED occurs when "serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act . . . or omission." *Sacco v. High Country Indep. Press, Inc.,* 271 Mont. 209, 896 P.2d 411, 429 (1995). Serious or severe emotional distress means that the "distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Id.* at 426 (quoting *Restatement (Second) of Torts* § 46 cmt. j). Under Montana law, emotional distress claims may arise from cases involving damage to property. *Maloney v. Home & Inv. Ctr., Inc.,* 298 Mont. 213, 994 P.2d 1124, 1137 (2000). Physical injury is not a prerequisite for recovery. *Id.* at 1135.

■ The district court properly recognized that *Sacco* and *Maloney* govern, and it correctly allowed the jury to determine whether the Oskowskis suffered distress "so severe that no reasonable [person] could be expected to endure it." *Sacco,* 896 P.2d at 426. During trial, the jury heard extensive testimony from the Oskowskis about their emotional health.

With the evidence presented, we cannot say that there was no legally sufficient basis upon which a reasonable jury could have found for the Oskowskis on their emotional distress claim. Accordingly, we affirm the district court.

## IV. Howard Turner's Emotional Distress Claims

 BNSF claims that the trial court erred by denying its motion to amend the judgment regarding Howard Turner's emotional distress claim. BNSF contends that Turner is not entitled to $75,000 in damages because no witnesses testified that he suffered any kind of emotional distress. We review a district court's denial of post-judgment amendment under Federal Rule of Civil Procedure 59(e) for abuse of discretion. *See Zimmerman v. City of Oakland,* 255 F.3d 734, 737 (9th Cir.2001).

A district court has considerable discretion when considering a motion to amend a judgment under Rule 59(e). *McDowell v. Calderon,* 197 F.3d 1253, 1254 n. 1 (9th Cir.1999) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1 (2d ed.1995)). There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is "necessary to correct *manifest errors of law or fact upon which the judgment is based;*" 2) the moving party presents "newly discovered or previously unavailable evidence;" 3) the motion is necessary to "prevent manifest injustice;" or 4) there is an "intervening change in controlling law." *Id.*

BNSF has not come forward with any new evidence to support its claim and there has not been a change in the controlling law. The only basis upon which BNSF could attack the verdict is that it is a manifest error of law. The jury, however, heard evidence that Turner battled the fire before it engulfed his home, and that he became trapped in portions of the rubble. Dr. Marian Martin, Mary Turner's treating psychologist, described this type of fire and the Turners' experiences being trapped in it as "an extreme traumatic stressor," something that creates a "significant fear." Lieutenant James Summers, who rescued Turner, also noted that the fire "was a threat to Howard's life." With this evidence, it was not an abuse of discretion for the district court to allow the jury's verdict and award to stand.

## V. Conclusion

For the foregoing reasons, the judgments of the district court are AFFIRMED.