Laura **NELSON**

v.

**EQUIFAX INFORMATION SER-VICES, LLC; Arrow Financial Services, LLC, et al.**

**No. CV 06–1568 RGK (PLAx).**

United States District Court, C.D. California.

April 5, 2007.

Order reducing damages June 26, 2007.

Agnes O. Martin, Brennan Wiener and Simons, Robert F. Brennan, Robert A. Wiener, Brennan Wiener & Associates, La Crescenta, CA, for Plaintiff.

Abraham J. Colman, David S. Reidy, Deborah E. Yim, Felicia Yu, Scott H. Jacobs, Reed Smith, Los Angeles, CA, for Defendants.

**Proceedings: (IN CHAMBERS) Defendant Arrow Financial Services LLC's Motion for Summary Judgment or in the alternative, Summary Adjudication (DE 40)**

R. GARY KLAUSNER, District Judge.

## I. *INTRODUCTION*

Plaintiff Laura Nelson ("Nelson") filed her Complaint on March 14, 2006 against Equifax Information Services LLC ("Equifax"), Arrow Financial Services LLC ("Arrow"), Magna Services ("Magna"), and Direct Merchants Bank ("Direct") (collectively "Defendants") for violations of the Fair Credit Reporting Act ("FCRA"), Fair Debt Collection Practices Act ("FDCPA"), and Rosenthal Fair Debt Collection Practices Act ("California FDCPA"). Nelson's claims arise out of Defendants' alleged reporting of erroneous information on her credit report.

Arrow's Motion for Summary Judgment is currently before the Court.

## II. *FACTUAL BACKGROUND*

The facts of the case are alleged as follows.

Equifax is one of three major credit reporting agencies that collects and reports consumer credit information. Arrow is a debt collection agency that performs collection services for creditors. Direct and Magna are creditors who collect debts on behalf of themselves and other creditors by reporting allegedly delinquent debts to credit reporting agencies. In November 2001, Direct reported an account ("Account") to Nelson's credit files for $187.00 past due. Nelson requested that the Account be removed from her credit report because it was not hers.[1] On January 10, 2002, Equifax deleted the Account from her credit report. However, in September 2002, Arrow on behalf of Direct, began attempting to collect the disputed $187.00 debt from Nelson and reported the disputed Account as an unpaid debt on her credit report.

On September 14, 2002, Nelson sent a certified letter to Magna, a subsidiary of Direct, disputing the Account as fraudulent. Nelson also sent copies of this letter to the three main credit reporting agencies, Equifax, Experian and Transunion ("CRAs"). Despite Nelson's letter, the Account continued to appear on her credit report, so she sent another certified letter to the CRAs on November 2, 2003. In response, on November 18, 2003, Direct sent a letter to Nelson stating that it instructed the CRAs to show t he Account as transferred/sold with a zero balance. In December 2003, Nelson sent copies of Direct's letter to the CRAs. On December 22, 2003, Arrow sent Nelson a letter confirming that they had instructed the CRAs to "Delete Account from Trade Line."

In response to Nelson's and Arrow's letters, Equifax and Transunion deleted the Account from Nelson's credit report. However, Experian continued to report the Account. In May 2004, Nelson filed a separate state court action against Arrow and Experian alleging they improperly collected upon and reported to third parties information regarding the disputed Account. On May 25, 2004, that action was removed to federal court (Case Number CV 04–3679). On September 16, 2004, Nelson voluntarily dismissed Arrow without prejudice from that action. Arrow and Nelson entered into a Settlement Agreement dated February 24, 2005, wherein Nelson released Arrow of all known or unknown claims relating to the Account, including collection and reporting of the Account to third parties, including CRAs. Nelson also settled its claims against Experian, and the entire action was dismissed on March 8, 2005.

On August 20, 2005, Nelson received a suspicious bill collection call. In response, Nelson retrieved a copy of her Equifax credit report, which again listed the disputed Account. On September 28, 2005, Nelson sent an FCRA dispute letter to the CRAs. She also sent copies to Magna, Direct, and Arrow. On October 22, 2005, Equifax informed Nelson that the disputed Account was not reported on her Equifax file. Thereafter, Experian and Transunion stopped reporting the Account, but Equifax continued to report the Account.

The evidence shows that the Account continued to appear on Nelson's credit report as late as December 27, 2005. Arrow also continued to assess interest on the Account until March 18, 2006.

On March 14, 2006, Nelson filed her Complaint in the current action. In her Complaint, Nelson alleges Arrow (1) changed her account number to make investigation and deletion more difficult, (2)

---

1. The parties do not dispute that the Account was illegitimate.

failed to properly re-investigate and delete the disputed Account from her credit report, and (3) re-reported the disputed Account, knowing it was false. Arrow now seeks summary judgment as to all claims alleged against it.

## III. *JUDICIAL STANDARD*

A motion for summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Even if the moving party lacks the ultimate burden of persuasion at trial, it nonetheless has the initial burden of production on a motion for summary judgment. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A moving party lacking the burden of persuasion at trial may carry its burden of production by (1) demonstrating, through evidence, that there is no triable issue of material fact as to each element of the affirmative defenses and counterclaims or (2) showing that the nonmoving party lacks evidence for an essential element of a claim on which it carries the burden of persuasion at trial. *Id.*

## IV. *DISCUSSION*

Under the federal statutory scheme, the FCRA governs the conduct of credit reporting agencies and furnishers of information, while the FDCPA governs the conduct of debt collectors. The California FDCPA governs the conduct of debt collectors, but defines "debt collector" more broadly than the FDCPA.[2] Based on the statutory definitions, Arrow is considered both a furnisher of information, as well as a debt collector.

For the foregoing reasons, the Court finds that Nelson has produced only sufficient evidence to support her federal and California FDCPA claims; her remaining claims fail because they are not supported by the evidence, or are otherwise barred.

### A. *Violation of Fair Credit Reporting Act*

The FCRA's purpose is to ensure CRAs adopt reasonable procedures so that consumers are treated fairly and equitably. 15 U.S.C. § 1681. FCRA Section 1681s–2 imposes duties on furnishers of information to CRAs to help achieve the FCRA's purpose. 15 U.S.C. 1681s–2.

Nelson alleges that Arrow, acting as a furnisher of information, violated the FCRA by failing to reinvestigate the disputed Account after receiving notice of such dispute from Equifax. In turn, Arrow contends that Nelson's FCRA claim fails because (1) there is no private right of action under FCRA Section 1682s–2(a), (2) Nelson bases her claim on Arrow's conduct which was released in the settlement agreement, (3) Arrow's statutory duty to investigate was not triggered, and (4) Nelson lacks evidence showing Arrow's alleged non-compliance was negligent or willful. For the following reasons, Arrow prevails on this claim.

### 1. *Private Right of Action under FCRA*

Nelson alleges that Arrow violated the FCRA under two provisions: Sections 1682s–2(a) and 1682s–2(b).

---

**2.** The FDCPA defines a "debt collector" as someone who collects debts owed, due or asserted by another. 15 U.S.C. § 1692a. Whereas, the California FDCPA broadens the definition of "debt collector" to include someone who collects debts on behalf of herself, as well as, on behalf of others. Cal. Civ.Code § 1788.2(c).

█ Arrow correctly points out that Nelson's FCRA Section 1682s–2(a) claim is barred because there is no private right of action for violations of that section of the statute. 15 U.S.C. § 1681s–2(d). The FCRA was enacted to ensure that credit reporting agencies use reasonable procedures which ensure fairness, impartiality, accuracy, and confidentiality. *See* 15 U.S.C. § 1681. However, enforcement of specific sections of the Act, like Section 1681s–2(a)'s duty on furnishers to report accurate information, is limited to federal agencies and officials and state officials. 15 U.S.C. § 1681s–2(d). Thus, to the extent that Nelson alleges violations of Section 1681s–2(a), Arrow's Motion is granted as to those claims.

█ Unlike FCRA Section 1681s–2(a), Section 1681s–2(b) is privately enforceable. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir.2002). Therefore, a private right of action exists under Section 1681s–2(b).

2. *Nelson's FCRA Section 1681s–2(b) Claim and the Prior Settlement Agreement*

Arrow contends that Nelson's 1681s–2(b) claim is barred because it is based on conduct that occurred prior to execution of the February 2005 Settlement Agreement and was released by that Agreement. Nelson does not challenge the ground on which Arrow bases its position. Rather, she argues that Arrow breached the Agreement, and therefore cannot claim the benefit of the Agreement.

█ As Arrow points out, the Settlement Agreement contains an explicit release of all claims relating to the Account, including unknown claims pursuant to a California Civil Code Section 1542 waiver.[3]

The Settlement Agreement also contains a choice of law provision providing that California law governs interpretation of the Agreement. Generally, California law dictates that a release "extinguishes any obligation covered by the release's terms, provided it has not been obtained by fraud, deception, misrepresentation, duress, or undue influence." *Skrbina v. Fleming Cos.*, 45 Cal.App.4th 1353, 53 Cal.Rptr.2d 481, 488–89 (1996). Arrow contends that the release covers its alleged wrongful conduct and therefore, any claim based on that conduct fails. Nelson does not dispute this point. Nor does she argue that the release was obtained by fraud, deception, misrepresentation, duress, or undue influence. Therefore, the Court finds that the release covers Arrow's pre-Settlement Agreement conduct.

█ However, Nelson argues that the release is invalid because Arrow breached an implied material term of the Settlement Agreement. Specifically, Nelson argues that the Settlement Agreement contained an implied term prohibiting Arrow from re-reporting the Account. Because Arrow re-reported the Account, it breached a material term, resulting in a rescission of the contract. This argument is unavailing.

██ A court usually will not imply terms into an agreement that is fully integrated. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir.1995). Under California law, the factors to consider when determining whether a contract is integrated are (1) the presence of an integration clause, (2) the language and completeness of a written agreement, (3) the terms of any alleged oral agreement and whether they contradict the terms of a written agreement, and (4) whether the oral agree-

---

**3.** Section 1542 reads "a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing this release, which if known by him must have materially affected his settlement with debtor." Cal. Civ.Code § 1542.

ment might naturally be made as a separate agreement. *Id.*

The evidence shows that (1) the Agreement contains an integration clause, (2) the language of the Agreement indicates it embodied the parties' entire agreement, and (3) there is no oral agreement. (Suppl. Decl. Yim Ex. 1.) Based on the balance of factors, the Court finds that the Settlement Agreement is fully integrated. Therefore, Nelson is prevented from claiming that the Agreement had an implied term that Arrow breached, nor will the Court read such an explicit reporting obligation into the Agreement. Thus, to the extent that Nelson's FCRA Section 1681s–2(b) claim is based on Arrow's conduct occurring prior to February 24, 2005, that claim is barred by the release.

■■■ However, a release does not apply to claims arising from subsequent conduct occurring after the execution of a release. *Orsini v. O/S SEABROOKE O.N.*, 247 F.3d 953, 965 (9th Cir.2001) (internal citations omitted). Thus, to the extent Nelson alleges violation of Section 1681s–2(b) based on Arrow's conduct occurring after February 24, 2005, such conduct may serve as the basis of Nelson's 1681s–2(b) claim.

### 3. *Arrow's Statutory Duty to Investigate After February 24, 2005*

■■■ Notwithstanding the discussion above, Nelson's Section 1681s–2(b) claim based on post February 24, 2005 conduct still fails because Arrow's duty under the statute was never triggered.

FCRA Section 1681s–2(b) imposes a duty of reinvestigation on furnishers of information to CRAs. 15 U.S.C. § 1681s–2(b)(1). This duty arises when a furnisher receives notice of a dispute regarding the accuracy of information they provided to a CRA. 15 U.S.C. § 1681s–2(b)(1). The Ninth Circuit has specifically held that the furnisher's Section 1681s–2(b) duty to in-vestigate is triggered only after the consumer notifies the CRA, and the CRA then notifies the furnisher of credit. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir.2002).

In order to trigger Arrow's duty of investigation under Section 1681s–2(b), Nelson must show that (1) she notified Equifax of the disputed account, and (2) Equifax notified Arrow of the disputed account. According to the evidence, Nelson notified Equifax of the disputed Account in September 2005, but Equifax failed to send notice to Arrow of the dispute. (Def. Reply UF 32; Dep. Fluellen, 63–63.) Even though Nelson sent copies of her letter disputing the Account directly to Arrow, in order for Arrow's duties under the FCRA to be triggered, Arrow must have received notice from Equifax. As previously discussed, Nelson's Section 1682s–2(b) claim can only be based on Arrow's conduct occurring after the February 24, 2005 Settlement Agreement. While Nelson's evidence shows that Equifax sent two Automated Consumer Dispute Verification ("ACDV") forms to Arrow in November 2003, any duty triggered by these notifications, which was subsequently breached, was released by the Settlement Agreement and cannot serve as the basis for her Section 1682s–2(b) claim. As to the pertinent timeframe, the evidence fails to establish that Arrow's duty to reinvestigate was ever triggered. Therefore, Arrow's Motion is granted as to Nelson's 1681s–2(b) claim.

### 4. *Negligent & Willful Non–Compliance with the FCRA*

Having concluded that Nelson's FCRA claim fails for the above-state reasons, the Court need not address whether Arrow's alleged noncompliance was willful or negligent.

## B. *Violation of Fair Debt Collection Practices Act*

The FDCPA's purpose is to "eliminate abusive debt collection practices by debt collectors ... and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692."

Nelson's Complaint alleges that Arrow, acting as a debt collector, violated the FDCPA by (1) changing her Account number, making reinvestigation and removal more difficult, and (2) re-reporting the disputed Account to the CRAs, knowing it was false.

According to Arrow, Nelson's FDCPA claim is time barred. Arrow further argues that, notwithstanding the statute of limitations, Nelson's claim still fails because her evidence is insufficient to show that (1) Arrow's alleged re-reporting of the Account to Equifax constitutes harassing, oppressive or abusive conduct, and (2) Arrow re-reported the disputed Account, knowing it was false.

### 1. *Statute of Limitations on FDCPA Claim*

 Arrow contends that Nelson's FDCPA Section 1692d claim is time barred. The Court agrees, but only as to conduct occurring prior to March 14, 2005.

The statute of limitations on a FDCPA violation is one year from the date the alleged violation occurred. 15 U.S.C. § 1692k(d). Nelson filed her Complaint on March 14, 2006. Pursuant to the relevant statute of limitations, any alleged wrongdoing that occurred prior to March 14, 2005 is time barred because it occurred more than one year before Nelson filed her Complaint. Nelson bases her FDCPA claim, in part, on Arrow's allegedly changing her account number, which occurred prior to March 14, 2005. Therefore, this conduct, and any other conduct occurring before March 14, 2005 is time barred.[4]

As to Nelson's surviving FDCPA claims, the following sections apply.

### 2. *Harassing, Oppressive or Abusive Conduct*

 FDCPA Section 1692d prohibits debt collectors from engaging in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with collection of a debt." 15 U.S.C. § 1692d. Nelson claims that Arrow violated FDCPA Section 1692d by (1) changing her account number, making investigation and removal of the disputed Account more difficult, and (2) re-reporting the Account, knowing it was false.

Arrow contends that Nelson's FDCPA claim must fail because she lacks evidence showing that the natural consequences of its conduct was to harass, oppress or abuse her. Specifically, Arrow contends that it did not change her account number or re-report the disputed Account. However, even if it did, such conduct does not rise to the level of harassing, oppressive or abusive conduct. The Court disagrees.

Examples of the type of debt collector conduct prohibited under Section 1692d include threatening violence or using obscene language. 15 U.S.C. § 1692d. The Section also contains a "catch all" provision allowing other conduct, not specifically listed in the statute, to constitute harassing, oppressive or abusive in violation of the statute. *See Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1178 (11th Cir.1985).

As a result of the Settlement Agreement and statute of limitations, the only conduct at issue is the re-reporting of the disputed Account.[5] Arrow denies re-reporting the disputed Account to CRAs. However, the evidence shows that the Account reap-

---

**4.** The Court notes that the alleged change in account number occurred prior to February 2005. Therefore any claim based on this conduct is also barred by the Settlement release.

**5.** As previously discussed, any claim based on the alleged change in account number is barred by both the statute of limitations and the Settlement release.

peared on her credit report in late 2005 (Yim Decl. Ex. 3, Nelson Dep. Ex. D) and Arrow continued to assess interest on the Account until March 2006. (Cutler Decl. Ex. A.) As such, the Court finds that a genuine issue of material fact exists as to whether Arrow re-reported the Account. Accordingly, Arrow's Motion is denied as to Nelson's FDCPA Section 1692d claim.

### 3. *Violation of 1692e(8)*

■ In order to sustain a Section 1692e(8) claim, a party must show that a debt collector communicated or threatened to communicate credit information which they knew or should have known was false, including failing to communicate that a debt was disputed. 15 U.S.C. § 1692e(8).

Nelson alleges that Arrow violated Section 1692e(8) by knowingly re-reporting false information to CRAs. (UF 28, 29; Weiner Decl. Ex. K, 44:19–45:7.) Arrow has never disputed that the Account was false, nor that it received notice from Nelson of the disputed account in September 2005. (UF 8; Cutler Decl. ¶ 6.) Because the disputed Account reappeared on her credit report in late 2005 (Yim Decl. Ex. 3, Nelson Dep. Ex. D) and Arrow continued to assess interest on the Account until March 2006 (Cutler Decl. Ex. A), there is a genuine issue of material fact as to this claim. Thus, Arrow's Motion is denied as to Nelson's Section 1692e(8) claim.

### C. *Violation of California's Fair Debt Collection Practices Act*

The purpose of the California FDCPA is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts...." Cal. Civ.Code § 1788.1(b).

■ Nelson alleges that Arrow violated the California FDCPA by (1) failing to properly investigate the disputed Account, and (2) re-reporting the Account to Equifax knowing it was false.[6] Arrow contends that Nelson's California FDCPA claim is completely preempted by the FCRA because the conduct giving rise to her claim is credit furnishing conduct regulated by the FCRA. The Court agrees.

Under the FCRA, "[n]o requirement or prohibition may be imposed under the laws of any State ... with respect to any *subject matter* regulated under ... section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies" 15 U.S.C. § 1681t(b)(1)(F)(ii) (emphasis added). FCRA Section 1681s–2(a) regulates the duty of furnishers of information to provide accurate information, and specifically prohibits the reporting of information after notice and confirmation of an inaccuracy. FCRA 1681s–2(b) regulates the duties of furnishers of information upon notice of dispute, and requires an investigation with respect to the dispute. Therefore, it is clear that the FCRA regulates the subject matter which forms the basis for Nelson's California FDCPA claim.

■ Nelson argues that the FCRA preemption provision pertains to only credit reporting laws of a state, not debt collection practices, which California FDCPA solely addresses. However, as aptly stated by another court, "statutes that do not overtly regulate credit reporting may still have the effect of regulating that area" *Pirouzian v. SLM Corp.*, 396 F.Supp.2d 1124, 1130 (S.D.Cal.2005).

---

6. Nelson also alleges Arrow violated the California FDCPA by changing her account number, making reinvestigation more difficult. Again, Arrow's allegedly changing Nelson's account number occurred before February 2005. Therefore, any claim based on this conduct is barred by the Settlement release and cannot be the basis for Nelson's California FDCPA claim.

Moreover, "the plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting." *Id.* "To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action." *Id.*

Based on the foregoing, the Court finds that Nelson's California FDCPA claim is preempted by the FCRA, and summary judgment as to this claim is granted in favor of Arrow.

### D. *Damages on Nelson's FDCPA Claim*

The FDCPA provides both actual and statutory damages. 15 U.S.C. §§ 1692k(a)(1), 1692k(a)(2)(A); Cal. Civ. Code §§ 1788.30(a) and (b).

Arrow argues that even if Nelson presents sufficient evidence to support her FDCPA claim, she has not suffered damages. Nelson contends that she has presented sufficient evidence to show that she has suffered economic and emotional distress damages. She also contends that Arrow's knowing and willful violations support her claim for statutory damages. The Court agrees.

#### 1. *Actual Damages*

 Arrow contends that Nelson lacks evidence showing actual damages. The Court disagrees.

Nelson alleges the following actual damages: 1) higher auto insurance premiums;

2) higher interest rate on GMAC home loan; 3) increased rates on credit cards; and 4) emotional distress. Nelson's most substantial evidence supporting her claim of damages are her own deposition testimony, Thomas Tarter's expert report, and Declaration of Collene Swenson.

For the following reasons, the Court finds that Nelson has submitted sufficient evidence of economic and emotional distress damages to support her FDCPA claim.

#### a. *Economic Damages*

According to Thomas Tarter's expert report, Arrow's continued reporting of the disputed Account and failure to delete the Account, resulted in damage to her credit rating and her ability to get credit. (Weiner Decl. Ex. O, Expert Witness Report 12–13.) The evidence shows that Nelson's December 2005 credit report, which contained the disputed Account, showed a significant drop in her credit score by Equifax (describing her score as "good"), as compared to the other two CRAs (describing her score as "excellent"). (Decl. Weiner Ex. I.) According to Tarter, negative credit items can reduce a consumer's credit score resulting in a higher cost of credit.[7] (Weiner Decl. Ex. 0, Expert Witness Report 11–14.) Mr. Tarter also states that a reduction of even five points can result in the cost of credit going up because it often results in a consumer falling below lender prescribed credit score guidelines, resulting in an increase in insurance, mortgage, credit card and automobile financing costs.[8] (Weiner Decl. Ex,

---

7. Despite Arrow's contention that Tarter's testimony should be excluded, the Court finds his report complies with Federal Rule of Evidence 702 because (1) it is based on sufficient facts and data (Weiner Decl. Ex. 0, Expert Witness Report 4–9) (2) is the product of reliable principles and methods (Weiner Decl.

Ex. 0, Expert Witness Report 6–9) and (3) Tarter has applied those principles and methods reliably to the facts of this case. (Weiner Decl. Ex. O, Expert Witness Report 6–9.)

8. The Court is not persuaded by Arrow's argument that this statement is hearsay because

0:Expert Witness Report 15.) Additionally, Tarter explains that consumers with credit scores below prescribed thresholds may also be required by lenders to pay higher down payments. (Weiner Decl. Ex. 0, Expert Witness Report 15.) Here, the evidence shows that the Arrow Account may have reduced Nelson's Equifax credit score by thirty points. (Decl. Weiner Ex. I.) The Court finds that based on the evidence presented, a triable issue of material fact exists as to economic damages. Thus, Arrow's Motion is denied as to economic damages.

### b. *Emotional Distress Damages*

 Arrow contends that Nelson lacks evidence to support emotional distress damages under the FDCPA. Citing *Cousin v. Trans Union Corp.*, Arrow contends that, in order to support her emotional distress damages claim, Nelson must present medical or psychological evidence. 246 F.3d 359, 371 (5th Cir.2001). However, courts are split as to the degree of specificity needed to sustain emotional distress damages. *See e.g. Acton v. Bank One Corp.*, 293 F.Supp.2d 1092, 1101 (D.Ariz. 2003) (denying defendant's motion for summary judgment as to emotional distress damages on FCRA, even though the plaintiff "ha[d] not offered overwhelming evidence of emotional distress damages."). In fact, the Ninth Circuit has declined to follow the Fifth Circuit's more stringent requirements for emotional distress damages. *See Zhang v. American Gem Seafoods*, 339 F.3d 1020, 1040 (9th Cir.2003) (upholding emotional damages based only on testimony); *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir.1994) (stating that emotional damages may be awarded based only on testimony or appropriate inference from circumstances).

Based on Ninth Circuit precedent, the Court finds that Nelson's testimony alone can sufficiently establish emotional distress damages, such that a jury could find in her favor on that issue. Specifically, Nelson testified at her deposition that, as a result of the disputed Account repeatedly reappearing on her credit report, she feels stigmatized, has fights with her partner, difficulty sleeping, recurring fear, vomiting, and sick stomach. (Decl. Wiener Ex. N 47:12–15; 61:4–7; 63:25 to 64:5; 88:17–18; 89:7–8; 90:16–17; 96:5–11.) This testimony raises a triable issue of material fact as to this issue. Thus, Arrow's Motion is denied as to Nelson's claim for emotional distress damages under the FDCPA.

### 2. *Statutory Damages*

 Statutory damages may be awarded under the FDCPA and do not require a finding of actual damages. 15 U.S.C. § 1692k(a)(2)(A); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 780 (9th Cir.1982). The Court may consider the following factors when deciding whether to grant statutory damages under the FDCPA: (1) frequency and persistence of non-compliance; (2) nature of such non-compliance; and (3) extent to which non-compliance was intentional. 15 U.S.C. § 1692k(b)($l$).

According to the evidence, Arrow's alleged violation of the FDCPA was persistent in that it continued for months after being notified of its inaccuracy in September 2005. (UF 9; Yim Decl. Ex. 3, Nelson Dep. 26–28.) Furthermore, the evidence suggests that Arrow's conduct was negligent, in that it continued to assess interest

---

it appears to be based on Tarter's personal/professional experience. Further, if this statement was hearsay, it would fall within an exception under Federal Rule of Evidence

803(8), (17) and (18) because it is likely based on the government reports, market reports or learned treatises, which Tarter reviewed while preparing his expert report.

on the Account until March 2006 and likely continued to communicate with CRAs regarding the Account, knowing it was false. The balance of factors weighs in favor of denying Arrow's Motion as to statutory damages on Nelson's FDCPA claim.

### V. *CONCLUSION*

In light of the foregoing, IT IS SO ORDERED that Arrow's Motion for Summary Judgment is **DENIED in part** and **GRANTED in part.** Specifically, Arrow's Motion is **granted** as to (1) Nelson's FCRA claims; and (2) Nelson's California FDCPA claim. Arrow's Motion is **denied** as to (1) Nelson's FDCPA claim (as to post-March 14, 2005 conduct only); (2) Nelson's economic and emotional distress damages; and (3) statutory damages on Nelson's FDCPA claim.

### IT IS SO ORDERED.

Proceedings: (IN CHAMBERS) DEFENDANT ARROW FINANCIAL SERVICES LLC'S MOTION TO ALTER OR AMEND THE JUDGMENT, OR IN THE ALTERNATIVE, FOR A NEW TRIAL (DE 130)

### I. *INTRODUCTION*

Plaintiff Laura Nelson ("Plaintiff") filed her complaint on March 14, 2006 against Defendant Arrow Financial Services LLC ("Defendant"). Plaintiff sought relief for Defendant's alleged violation of 15 U.S.C. § 1692e(8), a provision of the Fair Debt Collection Practices Act ("FDCPA").[1] The FDCPA prohibits communicating false credit information, knowing or having reason to know such information is false.

On May 4, 2007, the jury returned a verdict in Plaintiff's favor, awarding a $100,000 judgment, consisting of $85,000 in non-economic (i.e. emotional distress) damages and $15,000 in statutory damages.

Presently before the Court is Defendant's Motion to Alter or Amend the Judgment and in the Alternative, *Motion for New Trial.* For the reasons discussed below, the Court grants in part and denies in part Defendant's Motion.

### II. *FACTUAL BACKGROUND*

The facts established at trial are as follows. In or about September, 2002, Defendant, a collection agency, began collection upon an account reported to Plaintiff's credit files. At that time, Defendant showed the account with a past due balance of $244.30. On or about September 14, 2002, Plaintiff sent a letter to Magna Services, a dba for the reporting entity, challenging the account as fraudulent. Plaintiff also sent copies of the letter to the three major credit bureaus: Experian, TransUnion, and Equifax. When the account was not removed from her account, she followed up with another certified letter to the same addresses, dated November 2, 2003.

On December 22, 2003, Defendant, having previously purchased the account from the reporting entity, wrote to Plaintiff and advised her that it was instructing the three major credit bureaus to "Delete Account from Trade Line." Experian's failure to delete the account caused Plaintiff to bring suit against Experian and Defendant. The settlement agreement of that suit required Defendant to take all reasonable and necessary measures to remove Defendant's account from Plaintiff's credit reports. Instead of complying, Defendant

---

**1.** Plaintiff's allegations that Defendant violated 15 U.S.C. § 1681s–2 of the Fair Credit Reporting Act ("FCRA") and Cal. Civ.Code § 1788.1 of the California FDCPA were dismissed with prejudice in response to Defen-

dant's motion for summary judgment. Plaintiff voluntarily dismissed her 15 U.S.C. § 1692d claim under the FDCPA before the case was submitted to the jury for deliberation.

began re-furnishing the same account trade line to Equifax, albeit with an altered account number and using a different subscriber code, and internally continued to accrue interest to the account.

On or about August 20, 2005, Plaintiff discovered Defendant was still reporting the account, albeit with an altered account number and date. It was being reported to June, 2004 with an account balance of $301.00 over 120 days past due. At trial, Defendant argued that Equifax was responsible for the reporting. However, the jury credited the testimony of Equifax over that of Defendant, apparently finding that Defendant had inappropriately reported the new account number and information to Equifax.

No one has ever disputed the fact that the account was reported in error. Plaintiff spent five years and two trials against Defendant attempting to rectify the situation, and testified extensively at trial regarding the emotional distress Defendant's continuing course of action caused her.

## III. *JUDICIAL STANDARD*

### A. *Rule 59(e) Motion to Alter or Amend Judgment*

District courts have the power to "alter or amend" a judgment by motion under Rule 59(e). Fed.R.Civ.P. 59(e). Rule 59(e) provides an efficient mechanism by which the trial court can correct otherwise erroneous judgment without implicating the appellate process. *Clipper Exxpress v. Rocky Mt. Motor Traffic Bureau*, 674 F.2d 1252 (9th Cir.1982). Any motion which enables the trial judge to reconsider the validity of the judgment and vacate or alter as he sees fit is valid. *Id.*

 Generally, the grounds for a motion under Federal Rule of Civil Procedure 59(e) are: (1) newly discovered evidence; (2) commission of clear error by the district court; or (3) an intervening change in the governing law. *School Dist.*

*No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A trial court properly acts within its discretion in denying a Rule 59(e) motion where the verdict is not manifest error of law. *Turner v. Burlington Northern Santa Fe R.R.*, 338 F.3d 1058 (9th Cir.2003). A party may not present arguments or evidence for the first time in a Rule 59(e) motion if they could reasonably have presented such arguments or evidence earlier in the litigation. *Carroll v. Nakatani*, 342 F.3d 934, 935 (9th Cir.2003).

### B. *Rule 59(a) Motion for New Trial*

 Under Rule 59(a), a new trial may be granted to all or any parties on all or part of the issues, after trial. A partial new trial is proper only if the issue to be retried is "so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1133 (9th Cir.1995). A partial new trial solely on damages may be ordered so long as it does not involve a tangled or complex fact situation that makes it unfair to determine damages apart from liability. *Wharf v. Burlington Northern R.R. Co.*, 60 F.3d 631, 638 (9th Cir.1995) (no injustice resulting from retrial on damages only, without reopening liability issues). In a motion for a new trial, the trial judge has discretion to weigh the evidence and assess the credibility of witnesses. *Air–Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 190 (9th Cir.1989). The trial court may grant a new trial if the verdict is contrary to the clear weight of evidence, or if it is clear that the jury has reached a seriously erroneous result. The court should grant a new trial if the judge "on the entire evidence is left with the definite and firm conviction that a mistake has been commit-

ted." *Landes Construction Co. v. Royal Bank of Canada*, 833 F.2d 1365 (9th Cir. 1987). A new jury trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law." Fed. R. Civ. Proc. 59(a). Courts have granted new trials where excessive damages have been awarded and where an error of law has been made (including erroneous evidentiary rulings, jury instructions, and verdict forms). *Del Monte Dunes v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir.1996); *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir.1995) (ruling "substantially prejudiced" moving party).

## IV. DISCUSSION

 As an initial matter, Plaintiff erroneously contends that Defendant's motion to amend or alter judgment under Rule 59(e) is untimely, and therefore must be considered as a motion for relief under Rule 60(b). Untimely motions under Rule 59(e) are construed as motions based on Rule 60(b). *Mount Graham Red Squirrel v. Madigan*, 954 F.2d 1441 (9th Cir.1992). "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of judgment." Fed.R.Civ.P. 59(e). The 10 day limitation is to be strictly construed. *McConnell v. MEBA Medical & Ben. Plan*, 778 F.2d 521 (9th Cir.1985). However, Rule 6(a) provides that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Fed.R.Civ.P. 6(a). In the present case, Defendant filed its 59(e) motion on May 18, 2007, 11 days after entry of judgment on May 7, 2007. Excluding Saturdays and Sundays from the computation clearly places the motion within the 10 day limit, and thus Defendant's motion is properly considered a motion to amend or alter judgment under Rule 59(e).

To prevail on its Rule 59(e) motion to alter or amend the judgment, Defendant need show manifest error. *Turner v. Burlington Northern Santa Fe R.R.*, 338 F.3d 1058 (9th Cir.2003). Here, Defendants argue that statutory damages, actual damages, separate settlement, and expert testimony all implicate manifest error sufficient to justify granting its motion to alter or amend the judgment.

### A. Statutory Damages of $15,000 Were Improperly Awarded

1. *Statutory damages were properly sent to the jury*

 In federal court, all damages issues, including punitive damages, are to be decided by the jury. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998). Given that Plaintiff timely demanded a jury trial, the Court sees no reason why it, rather than the jury, would assess statutory damages.

2. *Statutory damages are limited to $1,000 per lawsuit*

 Plaintiff argues that Defendant's failure to object at trial to the special verdict form constitutes a waiver of the right to challenge the statutory damages award. However, Rule 59(e) does not require that objections be made ahead of time to manifest errors of law. The jury's decision to award $1,000 in statutory damages per violation, rather than per lawsuit, is a manifest error of law. The Ninth Circuit has concluded that statutory damages under the FDCPA are limited to $1,000 per lawsuit, not $1,000 per violation. *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1178 ("the fact that numerous violations of the FDCPA are predicated upon one set of circumstances should be considered and that it is best considered during the calculation of dam-

ages"). *See* 15 U.S.C. § 1692k(a)(1) and (2)(A) (limiting damages to the actual damages suffered by debtor and additional damages, not to exceed $1,000). Since the jury's award of statutory damages is a manifest error of law, Defendant is not precluded from raising the issue in its 59(e) motion, even if Defendant failed to properly raise the issue at trial.

 In accordance with statutory language and binding precedent of the Ninth Circuit, the Court hereby reduces statutory damages from $15,000 to $1,000.

### B. Actual Damages of $85,000 Were Properly Awarded

 Actual damages are available to any person injured by a violation of the FDCPA. 15 U.S.C. § 1692k(a)(1). FDCPA actual damages encompass damages for emotional distress and relational injuries. *See Zhang v. American Gem Seafoods*, 339 F.3d 1020, 1040 (9th Cir. 2003) (upholding emotional damages based only on testimony); *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir.1994) (stating that emotional damages may be awarded based only on testimony or appropriate inference from circumstances); *Smith v. Law Office of Mitchell N. Kay*, 762 F.Supp. 82 (D.Del. 1991) (actual damages awarded pursuant to FDCPA include not only out-of-pocket expenses but also damages for personal humiliation, embarrassment, mental anguish, or emotional distress). Proof of physical injury is not necessary to obtain an award of emotional distress damages under the FDCPA. *See Bingham v. Collection Bureau, Inc.*, 505 F.Supp. 864 (D.N.D.1981) (awarding actual damages to consumer for loss of happiness, interest in housework, and sleep, and for nightmares, headaches, sensitive stomach and crying spells, but no permanent ill effects). Given that the FDCPA provides relief for actual damages, including emotional distress damages in the absence of physical injury, Plaintiff's failure to show physical injury does not bar recovery of actual damages. Accordingly, the Court finds no manifest error in the jury's award of $85,000 in actual damages arising from Plaintiffs emotional distress.

### C. Equifax Settlement Has No Bearing on the Present Award

 Defendant's argument that the damages award should be offset by the Equifax settlement is unpersuasive. As Plaintiff correctly notes, the settlement with Equifax was reached under the Fair Credit Reporting Act ("FCRA"), a distinct cause of action from the FDCPA verdict against Defendant. There is no equitable offset for either of these causes of action. *McMillan v. Equifax Credit Information Services, Inc.*, 153 F.Supp.2d 129, 132 (D.Conn.2001); *Irwin v. Mascott*, 94 F.Supp.2d 1052, 1058 (N.D.Cal.2000); *Kay v. First Continental Trading, Inc.*, 966 F.Supp. 753, 754–55 (N.D.Ill.1997). The FDCPA does not contain any provision creating an implied or express right of contribution, indemnification, or equitable credit. Nor does Defendant present any evidence that federal common law creates such a right. Accordingly, the Court finds that no offset is warranted by virtue of Plaintiff's settlement with Equifax.

### D. Plaintiff's Expert Witness Testimony Was Proper

 Defendant's challenge to the testimony of Plaintiff's expert, Mr. Tarter, is unavailing for two reasons. First, Mr. Tarter did not offer medical testimony at trial. Thus, his lack of medical training has no bearing on the propriety or credibility of his testimony. Second, even if admission of the testimony was in error, there was significant testimony of other witnesses as to Plaintiff's severe emotional distress. Mr. Tarter's testimony was un-

1240

necessary to support the emotional distress award. Admission of the testimony, even if error, was harmless error.

### E. *Defendant's Request for New Trial*

To the extent that Defendant's request for a new trial is premised on arguments regarding statutory damages, the Court's amendment of judgment renders such arguments moot. As to Defendant's other arguments, having amended the improper statutory damages, the Court does not find the verdict to be against the clear weight of the evidence. Nor does the Court find error of law in the proceedings. Judicial discretion provides for the possibility of a new trial only on the issue of damages. However, there is no indication that the amended damages are excessive or otherwise improper. Accordingly, the Court rejects Defendant's request for a new trial.

## V. CONCLUSION

In light of the foregoing, Defendant's Motion is **granted in part and denied in part.** Specifically, the Court reduces the statutory damages from $15,000 to $1,000, thus reducing total damages from $100,000 to $86,000.

**IT IS SO ORDERED.**