**Carmen GOMEZ, Plaintiff,**

v.

**RESURGENT CAPITAL SERVICES, LP and LVNV Funding, LLC, Defendants.**

**No. 13 Civ. 7395(RWS).**

United States District Court, S.D. New York.

Signed Sept. 22, 2015.

Filed Sept. 23, 2015.

---

Law Office of Ahmad Keshavarz, by: Ahmad Keshavarz, Esq., Brooklyn, NY, for the Plaintiff.

Hinshaw & Culberson LLP, by: Concepcion A. Montoya, Esq., Han Sheng Beh, Esq., Jason Joseph Oliveri, Esq., New York, NY, for the Defendants.

## OPINION

SWEET, District Judge.

Two duelling motions for summary judgment are currently pending before the Court in this unfair debt collection practices case: one filed by Defendants Resurgent Capital Services, LP ("Resurgent") and LVNV Funding, LLC ("LVNV," collectively with Resurgent, the "Resurgent Defendants" or the "Defendants") seeking dismissal of the complaint filed by Plaintiff Carmen Gomez ("Gomez" or the "Plaintiff"), and one filed by Gomez seeking summary judgment on liability against the Resurgent Defendants, with proceedings to continue regarding the amount of damages. (Dkt. Nos. 57 & 79.) Also pending is Resurgent's motion for a protective order covering certain documents submitted by Gomez in her summary judgment briefing. (Dkt. No. 97.) For the reasons stated below, both summary judgment motions are granted in part and denied in part, and the motion for a protective order is granted.

**Prior Proceedings**

Gomez brought this case on October 18, 2013, filing a complaint against former defendants Inovision–Medclr Portfolio

Group, LLC; Peter T. Roach & Associates, P.C.; Kirschenbaum, Phillips & Roach, P.C.; Timothy Murtha; NCO Financial Systems, Inc., and the two remaining defendants, LVNV Funding, LLC and Resurgent Capital Services, LP. (Dkt. No. 1.) The Complaint alleged that the defendants had engaged in abusive debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (the "FDCPA"), the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., New York General Business Law § 349, and New York Judiciary Law § 487.[1] (See generally id.)

On January 14, 2014, defendants Inovision–Medclr Portfolio Group, LLC and NCO Financial Systems, Inc. made Gomez an offer of judgment pursuant to Fed. R.Civ.P. 68, which Gomez accepted two weeks later. (See Dkt. No. 22.) The Court dismissed those two defendants on June 5, 2014. (Dkt. No. 33.) In March of 2014, the parties agreed to a Protective Order governing the treatment of confidential information, which the Court approved on June 25, 2014. (Dkt. No. 41.) On January 13, 2015, Gomez dismissed her claims against defendants Peter T. Roach and Associates, P.C.; Kirschenabaum & Phillips, P.C.; and Timothy Murtha pursuant to a settlement agreement. (Dkt. Nos. 68 & 70.)

The Resurgent Defendants filed their motion for summary judgment on December 30, 2014. (Dkt.Nos.56–62.) Gomez filed her opposition papers on January 24, 2015 (Dkt.Nos.72–75), and then filed her own motion for partial summary judgment five days later. (Dkt.Nos.79–83.) The Resurgent Defendants filed papers on February 18, 2015 replying to Gomez' opposition

to its summary judgment motion and opposing the one she filed. (Dkt. No. 87–88.) Gomez filed her reply brief in support of her summary judgment motion on March 5, 2015 (Dkt. No. 92), and the Resurgent Defendants filed a sur-reply on March 26, 2015. (Dkt. No. 96.) The motion was head on submission on March 4, 2015. (See Dkt. No. 86.)

The Resurgent Defendants filed their motion for a protective order on March 26, 2015. (Dkt. No. 97–99.) Gomez filed her opposition on April 9 (Dkt. No. 102) and Resurgent filed its reply on April 13. (Dkt. No. 103.)

### The Facts

The facts are set forth in the parties' various Rule 56.1 Statements (Dkt. Nos. 61, 75, 82, & 88) and are not in dispute except as noted below.

The events that gave rise to this case began on September 12, 2005, when Mel S. Harris and Associates, LLC filed a lawsuit against Gomez, seeking to collect a debt she had allegedly incurred to Chase Bank, U.S.A., N.A. ("Chase"), which was later assigned to Inovision–Medclr Portfolio Group, LLC ("Inovision"). The parties dispute whether Gomez was ever served; an affidavit of service says that she was served on September 28, 2005, but Gomez states that she never received notice of the lawsuit and speculates that she may have been the victim of "sewer service." Either way, it is undisputed that Gomez did not appear in the suit, and a default judgment was entered against her.

The history of the alleged debt is a tangled one. Gomez admits that she had an account with Chase, but maintains that she ceased using it in or before 1995,

---

**1.** Gomez withdrew her Telephone Consumer Protection Act claim while briefing these motions. (See Pl.'s Opp. Br., Dkt. No 72, at 14.) The Judiciary Law claim was only alleged

against Roach (see Complaint, Dkt. No. 1 at 17), and is thus no longer active after Roach's dismissal from the case.

rendering the validity of any action regarding it in 2005 dubious. Although the lawsuit regarding the debt was brought by Inovision, Gomez questions whether Chase ever sold that account to anyone and states that there is no evidence that title to the account ever passed from Chase to Inovision. Defendants state that Inovision sold Gomez' debt to Sherman Originator III, LLC ("Sherman"), a nonparty to this case, and that Sherman transferred the debt to defendant LVNV Funding, LLC ("LVNV"). Gomez questions whether the alleged paperwork of those sales, which covers an unknown number of accounts, actually includes hers, since they make no specific mention of her. She also states that she never received any notice that her debts had been assigned and argues that any attempt to collect the debts is therefore invalid.

Defendants utilized a chain of entities to collect Gomez' debt. LVNV had a contractual relationship with Resurgent, its "master servicer." Resurgent then hired the law firm of Eltman, Eltman and Cooper, P.C. ("EEC") to collect on the judgment against Gomez. EEC in turn retained Peter T. Roach and Associates, P.C. (together with successor firm Kirschenbaum, Phillips & Roach, P.C., "Roach") to collect on the judgment. Roach employed former defendant Timothy Murtha ("Murtha") as an attorney to handle the case. Roach also used another corporation, Global Connect, to make automated calls.

On or around October 19, 2012, Murtha signed an information subpoena and restraining notice to be sent to Municipal Credit Union, Gomez' bank, seeking to enforce the judgment against her. The parties differ on how much attention Murtha put into the notice. Gomez cites Murtha's deposition from another civil lawsuit involving Roach, in which he estimated he signed approximately 400 postjudgment enforcement documents per week, and alleges that Murtha "robo-signed" her notice without actually reviewing its merits. Defendants note that in this case Murtha testified that he executes approximately two and a half postjudgment execution devices per work day, and contend that he did not "robo-sign" the document.

MCU sent a copy of the restraining notice to Gomez on November 7, 2012. On December 5, 2012, Gomez sent a letter to Roach saying that she had no knowledge of the debt, stating that the statute of limitations on the debt had expired, and requesting proof of the debt. She also requested not to be called on her cellular phone. On December 11, 2012, Roach sent Gomez a letter seeking to collect a judgment of $2,366.46, plus interest at a rate of 9 percent annually, amounting to $3,864.91 in total. The check was to be made payable to Roach.

During this time, Gomez states that she continued receiving debt collection phone calls. She received debt collection calls to her cellular phone on November 21, 27, and 29, 2012; December 4, 7, and 31, 2012; and January 7, 18, and 19, 2013.[2] Roach's

2. Defendants' response to these assertions is puzzling. They "deny that the facts set forth ... are undisputed" and state that Gomez' proffered evidence does not support the assertions that the calls were made by or on behalf of Roach, or that they were made for the purposes of debt collection. However, while the Defendants deny that the facts are undisputed, they do not actually dispute them by offering any evidence to the contrary, or even by asserting that the facts are incorrect. (See D.'s Response to Pl.'s Local Civil Rule 56.1 Statement, Dkt. No. 88, at 14.) These facts, and those alleged in several other paragraphs to which Defendants responded with similar non-denial denials, are deemed admitted for the purposes of this motion. See Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts ... will be deemed to be admitted for the purposes of the

records indicate that additional calls were made.

Gomez filed an Order to Show Cause in Bronx Civil Court, seeking to vacate the 2005 judgment against her. On February 19, 2013, the Honorable Ruben Franco signed the Order, which required that all debt collection activities be stayed. On March 8, 2013, Judge Franco vacated the default judgment and ordered that "any funds including fees in the possession of [LVNV], [the] City Marshal, or any other agent shall be returned to [Gomez] forthwith." However, even after Judge Franco's order was entered, the City Marshal continued to garnish Gomez' wages three times on Defendants' behalf, totalling roughly $400, with a similar amount being taken and held in trust. Gomez also filed an answer and a motion to dismiss in the original debt collection action. Her motion to dismiss was granted on May 31, 2013.

Gomez alleges that she has suffered severe emotional distress as a result of the debt collection actions taken against her, including the phone calls she received, the restraints placed on her bank account, and the garnishment of her wages. According to her, she could not sleep and suffered "extreme stomach pain after every meal," and even had suicidal thoughts. It is undisputed that she incurred attorney's fees in fighting the attempts to collect the debt. Gomez estimates that the fees amount to over $1,500; Defendants assert that her evidence for that total is lacking and deny that the amount is so high.

### Applicable Standard

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.,* 735 F.Supp. 1205, 1212 (S.D.N.Y.1990) (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

As to the motion for a protective order, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *In re Zyprexa Injunction,* 474 F.Supp.2d 385, 415 (E.D.N.Y.2007) (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). The touchstone of the court's power under Rule 26(c) is the requirement of "good cause." *Id.* The party wishing to seal materials bears the burden of demonstrating good cause as

motion *unless specifically controverted . . . ."* (emphasis added)).

This measure is particularly warranted given that inconsistencies in Defendants' Rule 56.1 statements indicate that these murky responses are being utilized to avoid making potentially harmful admissions. (*Compare, e.g.,* D.'s Local Civil Rule 56.1 Statement, Dkt. No. 61, ¶ 13 ("On March 15, 2013, [Roach] received notice that the Gomez Judgment was

vacated.") *with* D.'s Response to Pl.'s Local Civil Rule 56.1 Statement, Dkt. No. 88, at 18 ("there is no indication [in the evidence offered by Gomez] that the Roach Defendants or the Resurgent Defendants received notice of the vacatur of the Gomez Judgment. The contents of paragraph [sic] are denied because the citations to the record do not support this statement of fact.").

to why the material should be concealed from the public. *New York v. Actavis, PLC,* No. 14 Civ. 7473, 2014 WL 5353774, at *3.

### *The Case Is Not Mooted by the Resurgent Defendants' Offer of Judgment*

On March 4, 2014, Defendants made Gomez an offer of Judgment pursuant to Fed.R.Civ.P. 68, in the amount of $4,001 "plus reasonable attorney's fees" stemming from this litigation. Gomez declined the offer. Defendants argue that because their offer fully satisfied Gomez' claim, the case is now moot.

Rule 68 provides that a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. Fed.R.Civ.P. 68(a). If the claimant accepts the offer, the clerk enters judgment on those terms. *Id.* If the claimant declines the offer, and later obtains a judgment that is less favorable, she must pay the costs incurred after the offer was made. Fed.R.Civ.P. 68(d). If the proposed offer of judgment satisfies the entire demand, the claim is mooted, and the Court may enter judgment according to the offer's terms. *See Ambalu v. Rosenblatt,* 194 F.R.D. 451, 453 (E.D.N.Y.2000); *see also Abrams v. Interco Inc.,* 719 F.2d 23, 32 (2d Cir.1983).

■ The parties dispute whether the offer of $4,001 does in fact satisfy the Plaintiff's entire claim. The FDCPA allows a victim of abusive debt collection practices to recover any actual damages she has suffered as a result of any violation, plus additional statutory damages up to $1,000, attorney's fees, and costs. 15 U.S.C. § 1692k(a). The damages that Gomez alleges amount to over $1,500 in attorney's fees spent in order to vacate the default judgment entered against her in 2005, plus

what her briefing refers to as "garden variety emotional distress." (Dkt. No. 72.)

Defendants appear to have arrived at the $4,001 figure by adding $1,000 in statutory damages under 15 U.S.C. § 1692k(a) to the $1,500 in attorney's fees Gomez claims she paid and $1,500 in emotional damages, which they believe is the maximum that Gomez could possibly obtain in this Circuit. For this latter proposition, they cite a number of FDCPA cases in which courts in this Circuit have limited recovery for emotional damages to amounts under $1,500 or reduced higher damage awards to amounts below $1,500. *E.g., Mira v. Maximum Recovery Solutions,* No. 11 Civ. 1009, 2012 WL 4511623 (E.D.N.Y. Aug. 31, 2012); *Krueger v. Ellis, Crosby & Assocs., Inc.,* No. 05 Civ. 0160, 2006 WL 3791402 (D.Conn. Nov. 9, 2006); *Gervais v. O'Connell, Harris & Assocs., Inc.,* 297 F.Supp.2d 435 (D.Conn.2003). Gomez does not cite any case awarding a greater amount.

Accepting Defendants' argument would require the Court to rule as a matter of law that a FDCPA plaintiff's potential recovery for emotional distress is capped at $1,500. While the Defendants establish that courts in the Second Circuit have generally been circumspect in awarding damages for emotional harm in FDCPA cases, they do not cite any statute or case law establishing a cap on such damages, and courts elsewhere have awarded amounts for emotional harm many times greater what the Defendants have offered Gomez. *See, e.g., Goodin v. Bank of Am., N.A.,* 114 F.Supp.3d 1197, 1213–14, No. 13–CV–102, 2015 WL 3866872, at *13 (M.D. Fla. June 23, 2015) ("Accordingly, the Court, as fact-finder, finds that Mr. and Mrs. Goodin have proven entitlement to $50,000 each for their emotional distress."); *Nelson v. Equifax Info. Servs., LLC,* 522 F.Supp.2d 1222, 1239 (C.D.Cal.

2007) (upholding jury award in FDCPA case of $85,000 in damages based on emotional distress); *see also McCaig v. Wells Fargo Bank (Texas), N.A.,* 788 F.3d 463, 484 (5th Cir.2015) (affirming $75,000 in damages for emotional distress awarded under equivalent Texas statute). As a matter of law, the maximum amount that Gomez can recover in damages for emotional harm cannot be established, and summary judgment on these grounds is not appropriate. *See Sibersky v. Borah, Goldstein, Altschuler, & Schwartz, P.C.,* 242 F.Supp.2d 273, 278 (S.D.N.Y.2002).

### Partial Summary Judgment is Granted for Gomez on her FDCPA Claim

■ The FDCPA creates a private right of action for persons who are subjected to a variety of abusive debt collection practices. *See* 15 U.S.C. § 1692k. The Second Circuit summarizes its function and operation thus:

> The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *DeSantis v. Computer Credit, Inc.,* 269 F.3d 159, 161 (2d Cir.2001). The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S.Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696. The FDCPA sets forth examples of particular practices that debt collectors are forbidden to employ. *See* 15 U.S.C. § 1692e. The list, however, is non-exhaustive, and the FDCPA generally forbids collectors from engaging in unfair, deceptive, or harassing behavior. *See* 15 U.S.C. §§ 1692 *et seq.*

*Kropelnicki v. Siegel,* 290 F.3d 118, 127 (2d Cir.2002). In order to establish a violation under the FDCPA, 1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, 2) the defendant collecting the debt is considered a "debt collector," and 3) the defendant has engaged in any act or omission in violation of FDCPA requirements. *Plummer v. Atl. Credit & Fin., Inc.,* 66 F.Supp.3d 484, 488 (S.D.N.Y.2014). Here, it is unquestioned that Gomez was the object of efforts to collect a consumer debt, and Defendants do not dispute that they are "debt collectors" under the terms of the FDCPA. *See id.* at 488-89 (declaring that assignees who purchase consumer debt for the purposes of collection qualify as a debt collector under the FDCPA).

The motion therefore turns on the third prong of the test-whether the Resurgent Defendants violated the FDCPA. Gomez essentially points to four actions taken against her as violations of the FDCPA: first, that she repeatedly received collection calls even after demanding that they stop; second, that Murtha "robo-signed" the execution documents enforcing the 2005 judgment against her; third, that she

was never sent a notice of assignment informing her that LVNV now owned her debt; and fourth, that the debt collectors continued to garnish her wages and refused to return her money, in violation of the stay and vacatur orders issued by Judge Franco.[3]

Since the parties vigorously dispute whether Murtha "robosigned" the execution documents and whether Gomez received a notice of assignment, and since neither party has mustered sufficient evidence to prevail on either matter as a matter of law, summary judgment cannot be granted on those bases.[4] However, both sides agree that Gomez sent a letter on December 5, 2012 denying the debt and asking for collection calls to stop, but that calls continued to be placed to her afterwards. Similarly, both sides agree that her wages continued to be garnished on the Resurgent Defendants' behalf even after Judge Franco ordered collection activity to cease and vacated the 2005 judgment against Gomez. Each of these incidents violated the FDCPA. *See* 15 U.S.C. § 1692c(c) ("If a consumer notifies a debt collector in writing that the consumer re-

fuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt ...."); 15 U.S.C. § 1692f(1) (proscribing "[t]he collection of any amount ... unless such amount is expressly ... permitted by law.").

Neither violation, however, was committed by the Defendants, who never contacted Gomez directly. Instead, they utilized a chain of entities to collect the debt on their behalf, beginning with LVNV, the actual debt holder, and extending through Resurgent, LVNV's master servicer, to EEC, a law firm hired by Resurgent, onwards to the Roach law firm and its successor, which were hired by EEC, and then on to Murtha, the attorney at the Roach firm in charge of executing on Gomez' debt, and Global Connect, which was retained by Roach to make telephone calls. Gomez does not allege that the Defendants ordered, oversaw, or even were aware of the actions taken to collect Gomez' debt on their behalf.[5]

3. Gomez makes a fifth allegation, claiming that she received a phone call in November 2013 from a man who identified himself as "Brandon" and threatened to garnish 20 to 25 percent of her wages. The allegation cannot be credited at the summary judgment stage because it is based only on her own affidavit, and she did not attempt to depose Raymond Hunter, the employee who both sides agree was the person who identified himself as Brandon. The telephone call also does not fit Gomez' offered timeline, since November 2013 was well after Judge Franco vacated her alleged debt, and even after she had filed her Complaint in this case. Although Defendants responded to the allegation with another non-denial denial (*See* Dkt. No. 88 ¶ 38), they did cite to deposition testimony by Murtha that tended to contradict the proposition.

4. Defendants point to two documents sent to Gomez "that disclosed the assignment of the

judgment," but the documents themselves simply state that Gomez owes a debt to Inovision and that Roach is attempting to collect on it. (*See* Dkt. Nos. 83–8 and 83–9.) These documents are insufficient to inform her of which debt is at issue and how LVNV came to own it, with one of the documents even listing Inovision, not LVNV, as the only creditor. The issue of whether she received a notice of assignment thus comes down to Gomez' word that she received no notice against Murtha's testimony that he mailed her one.

5. Gomez argues for the first time in her reply brief that she has obtained several contracts and training manuals showing that the Defendants exercised control over the Roach entities. "[I]ssues raised for the first time in a reply brief are generally deemed waived." *In re Motors Liquidation Co.,* 538 B.R. 656, 665 n. 4 (S.D.N.Y.2015) (quoting *Conn. Bar Ass'n v. United States,* 620 F.3d 81, 91 n. 13 (2d

Thus, the motion turns on whether the Defendants can be held vicariously liable for FDCPA violations committed by the people who worked for them, but not under their direct control. Courts are split on this issue, both within this District and among the Courts of Appeals. Some judges have followed the Third Circuit's holding in *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir.2000) and allowed entities that themselves meet the definition of debt collector under the FDCPA to be held vicariously liable for the actions taken to collect debts on their behalf, whether or not they actually exercised control over them. The leading case for the proposition within this District is *Okyere v. Palisades Collection, LLC*, 961 F.Supp.2d 508 (S.D.N.Y.2013). *See also, e.g., Plummer*, 66 F.Supp.3d at 493; *Fritz v. Resurgent Cap. Servs., LP*, 955 F.Supp.2d 163, 177 (E.D.N.Y.2013).[6] The second line of cases follows the Ninth Circuit's holding in *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1173 (9th Cir.2006) to require that any vicarious liability in a FDCPA case be based on "general principles of agency," under which "to be liable for the actions of another, the principal must exercise con-

trol over the conduct or activities of the agent." (quotation omitted) The leading case following *Clark* in this district is *Bodur v. Palisades Collection, LLC*, 829 F.Supp.2d 246, 259 (S.D.N.Y.2011). *See also, e.g., Nichols v. Niagara Credit Recovery, Inc.*, No. 12–cv–1068, 2013 WL 1899947, at *5 (N.D.N.Y. May 7, 2013); *Sanchez v. Abderrahman*, No. 10 Civ. 3641, 2013 WL 8170157, at *6 (E.D.N.Y. July 24, 2013).[7]

This decision will follow *Pollice* and *Okyere* in holding that debt collectors such as the Defendants are vicariously liable for FDCPA violations committed by agents acting on their behalf, whether or not they exercised direct control over them. Although the FDCPA is silent on the issue, the fact that Congress defined "debt collector" to include any person "who regularly collects or attempts to collect, *directly or indirectly*, debts owed or due or asserted to be owed or due another," 15 U.S.C. § 1692a(6), indicates an intent to apply liability to all entities involved in the debt collection process, regardless of whether they face the consumer directly. Moreover, the same subsection contains several subcategories excluding various types of

Cir.2010)). Since summary judgment can be granted based on the vicarious liability issue alone, the Court need not reach this question.

6. LVNV litigated the issue of whether it was vicariously liable for debt collection actions taken on its behalf in *Fritz*, and lost. *See Fritz*, 955 F.Supp.2d at 177. As such, LVNV (but not Resurgent) is collaterally estopped from rearguing the issue. District courts in the Second Circuit are permitted to raise the issue of collateral estoppel *sua sponte*. *See Curry v. City of Syracuse*, 316 F.3d 324, 330–31 (2d Cir.2003).

7. Gomez argues that Defendants' control over Roach and their agents is established by the attorney-client relationship between Resurgent and the EEC law firm, which in turn hired the Roach firm. While the contention may have merit, it runs head-on into the same

split in authority. *Compare Okyere*, 961 F.Supp.2d at 517 ("Moreover, the nature of an attorney-client relationship itself reflects that the client has the power to 'control' its agent in material respects if the client wishes to do so.") *with Bodur*, 829 F.Supp.2d at 259 ("Without evidence that [debt collector client] exercised control over [law firm]'s conduct ... [client] is not vicariously liable and therefore is entitled to summary judgment."). Moreover, neither the parties nor the cases cited touch on whether the question of control is different when the law firm retains another law firm, as happened here. As with Gomez' allegations of direct control, since the motions can be resolved on the issue of vicarious liability alone, the Court need not reach the attorney-client question.

debt collectors' agents from the provisions of the FDCPA, indicating that Congress took care to break the liability relationship between debt collectors and agents within those categories, and implying that it wished to keep a liability relationship between debt collectors and agents not so excluded. *See id.*

The legislative history of the FDCPA also indicates a congressional intent to include large debt collection entities such as the Resurgent Defendants within the FDCPA's ambit. According to the Senate Committee on Banking, Housing, and Urban Affairs, the Act is geared toward collection agencies generally, since "[u]nlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them." S.Rep. No. 95–382, at 2 (1977), 1977 U.S.C.C.A.N. at 1696. Neither the text of the FDCPA nor its legislative history indicates that Congress intended to draw a line between the activities of large debt collection agencies like the Resurgent Defendants, who buy consumer debt in bulk but contract out the actual collection work, and the ground-level operations that actually contact individual debtors. Rather, the Act's recognition that "[e]xisting laws and procedures for redressing these injuries [were] inadequate to protect consumers" indicates that Congress intended to stop debt collectors large and small from using legalistic means to avoid liability for abusive practices. *See* 15 U.S.C. § 1692(b).

 Contrary to the Defendants' assertions, holding debt collectors vicariously liable for their agents' actions is consistent with traditional common law principles.

As Judge Gorenstein noted in *Okyere,* the common law "ordinarily make[s] principals liable for acts of their agents merely when the agents act 'in the scope of their authority.'" *Okyere,* 961 F.Supp.2d at 517 (quoting *Meyer v. Holley,* 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003)). That authority need not even be authentic, due to "the established rule of agency law that a principal is liable to third parties for the acts of an agent operating within the scope of the agent's real or apparent authority." *See Security Pac. Mortg. & Real Estate Servs., Inc. v. Herald Ctr., Ltd.,* 891 F.2d 447, 448 (2d Cir.1989). Where a ground-level debt collector contacts a consumer, claiming that it is acting on behalf of an assignee that has purchased his or her debt, the collector acts on behalf of assignee and represents to the consumer that it has the assignee's permission to do what it does. The assignee, as the party whose authority the groundlevel debt collector is utilizing and the party who stands to benefit from any aggressive tactics, can be held liable under traditional common-law principles.

In addition to being consistent with the common law and with Congress' intention in enacting the FDCPA, holding debt collectors liable for FDCPA violations made on their behalf should incentivize them to actively supervise their agents with an aim toward minimizing abusive practices. To allow debt collectors to shield themselves from liability by placing a long enough chain of entities in between themselves and the consumer would encourage willful blindness to the actions taken in their name. Adopting *Bodur's* control requirement would also place significant evidentiary burdens on plaintiffs who, given their status as debtors, are likely to lack the resources to sort out complex links between the debt collection entities aligned

against them.[8]

Since it is undisputed that Roach took actions that amount to violations of the FDCPA, and that it did so on behalf of the Resurgent Defendants,[9] summary judgment is granted for the Plaintiff as to liability on her FDCPA claim, insofar as it pertains to telephone calls made to her after she sent her letter demanding they cease and to the garnishment of her wages after the entry of Judge Franco's Orders. Both sides' motions for summary judgment are denied in all other respects.

### Summary Judgment is Granted for Defendants on Gomez' § 349 Claim

New York General Business Law § 349 outlaws "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," and creates a private right of action for persons harmed by any such deceptions. In order to state a cause of action under § 349, a plaintiff must show 1) that the defendant's conduct is "consumer-oriented," 2) that the defendant is engaged in a "deceptive act or practice," and 3) that the plaintiff was injured by this practice. *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir.2010).

Gomez alleges that Defendants violated § 349 by "filing time barred collection lawsuits, entering default judgments

based on sewer service, seeking to collect on those sewer service default judgments on time barred debts .... [and] robo-signing post-judgment executions impliedly represented to consumers that an attorney had done a meaningful review prior to issuing the execution when none was done." [sic] (Complaint, Dkt. No. 1, at ¶ 80.) Any § 349 claim based on the filing of the initial 2005 lawsuit against her, any putative sewer service, or the obtaining of the initial default judgment is time-barred due to § 349's three-year statute of limitations. *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210, 727 N.Y.S.2d 30, 750 N.E.2d 1078 (2001). A claim based on the enforcement of the judgment against her, or on the "robo-signing" of the execution paperwork would not be time-barred, but fails for a different procedural reason.

Rather than a claim based on § 349, a general statute which covers deceptive business practices, Gomez' state law claim is actually one for a violation of General Business Law § 601, which prohibits a variety of abusive debt collection practices, including to "[c]laim, or attempt or threaten to enforce a right [to collect a debt] with knowledge or reason to know that the right does not exist." While this statute covers Roach's attempts to collect on a

---

**8.** Moreover, the *Bodur* rule could cut plaintiffs off from recovery altogether if debt collectors are clever enough to avoid direct control in each link of the chain, while leaving consumer-facing entities so undercapitalized as to be judgment-proof. Although the financial picture of the entities working on the Resurgent Defendants' behalf is incomplete, the record before the Court indicates that as the entities in the chain came closer to contact with consumers, they had ever-shallower pockets.

**9.** Defendants argue for the first time in their reply brief that Roach acted outside the scope of its agency. "[I]ssues raised for the first

time in a reply brief are generally deemed waived." *In re Motors*, 538 B.R. at 665 n. 4. Even if the issue were not waived, the contention is without merit. Defendants argue that a "rogue attorney" who violates the law cannot act within the scope of his authority, by definition, citing a fifteen-year-old case from the Western District of New York Bankruptcy Court and a 22–year–old case from the Ohio Court of Appeals. Their argument would result in the abolition of vicarious liability altogether, since a plaintiff could only recover for conduct that violated the law and any violation of the law would be outside the scope of an agent's authority.

debt that it should have known was invalid, Gomez cannot sue the Resurgent Defendants under it because "[t]he New York Court of Appeals has stated unequivocally that Section 601 does not supply a private cause of action." *Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir.2001) (citing *Varela v. Investors Ins. Hldg. Corp.,* 81 N.Y.2d 958, 961, 598 N.Y.S.2d 761, 615 N.E.2d 218 (1993)). "Plaintiffs cannot circumvent this result by claiming that a Section 601 violation is actionable under Section 349." *Id.* Summary judgment is granted for the Defendants on Gomez' § 349 claims.

### The Motion for a Protective Order is Granted

Defendants separately move for a protective order sealing a set of documents submitted by Gomez in support of her reply brief. These documents consist of 1) the Amended and Restated Servicing Agreement between LVNV and Resurgent, 2) the Collection Services Agreement between Resurgent and EEC, 3) the Service Provider Master Agreement between EEC and Roach, and 4) Resurgent's Attorney Standards and Operations Manuals. (D.'s Protective Order Br., Dkt. No. 99, at 4). The three contracts were produced during this case, while the manuals were produced by a third party in a different litigation.

Defendants have adequately shown that the materials contain proprietary information that could harm their business if it were to be disclosed. The Attorney Standards and Operations Manuals contain information about Resurgent's computer system, the codes put into it, protocols for transferring account information, procedures for handling accounts, and descriptions of fee arrangements with the law firms it employs to collect debts. (D.'s Protective Order Br., Dkt. No. 99, at 7–8.) While the contracts between LVNV, Resurgent, EEC, and Roach are less substantive in nature, Defendants aver that they "identify the fee arrangements and structures, set down procedures regarding Roach's settlement authority during all debt collection litigation, and other policies regarding litigation of collection suits." (*Id.*)

The Court is satisfied that disclosure could cause harm to Defendants' business, and that there is good cause for the documents to remain confidential. The conclusion is buttressed by the fact the documents are offered in support of an argument that was first raised in a reply brief, and therefore waived, *see In re Motors Liquidation Co.,* 538 B.R. 656, 665 n. 4 (S.D.N.Y.2015) (quoting *Conn. Bar Ass'n v. United States,* 620 F.3d 81, 91 n. 13 (2d Cir.2010)), and by the fact that this Opinion resolves both sides' summary judgment motions without the need to refer to them. The Defendants' motion for a Protective Order is therefore granted.

### Conclusion

Summary judgment is granted for the Plaintiff as to liability on her FDCPA claim, insofar as it pertains to telephone calls made to her after she sent her letter demanding they cease, and to the garnishment of her wages after the stay and vacatur of the default judgment against her. Summary judgment is granted for Defendants on Plaintiff's General Business Law § 349 claim. Both parties' motions for summary judgment are denied in all other respects. The Defendants' motion for a protective order is granted.

It is so ordered.